**APPEAL, WDREF**

# U.S. Bankruptcy Court
# Eastern District of New York (Brooklyn)
# Bankruptcy Petition #: 1−26−42859−jmm

*Date filed:* 06/08/2026
*341 meeting:* 08/28/2026

*Assigned to:* Jil Mazer−Marino
Chapter 11
Involuntary

***Debtor***
**BE GREENBRIAR LLC**
50 Union Avenue, Suite 505
Irvington, NJ 07111
ESSEX−NJ
Tax ID / EIN: 00−0000000

represented by **Christian N. Martinez**
The Law Office of Christian N. Martinez
PO Box 3
Chester, NY 10918
(845) 544−9189
Email: christian@cmartinez−law.com

**Christian Nelson Martinez**
The Law Office of Christian N. Martinez, PLLC
PO Box 3
Chester, NY 10918
845−926−7835
Email: christian@cmartinez−law.com

***Petitioning Creditor***
**David Neiman**
1620 Vauxhall Rd Suite 308
Union, NJ 07083

***U.S. Trustee***
**Office of the United States Trustee**
Eastern District of NY (Brooklyn)
Alexander Hamilton Custom House
One Bowling Green
Room 510
New York, NY 10004−1408
(212) 206−2580

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 09/17/2026 | | 39 | Motion for Withdrawal of Reference Fee Amount $ 199 Filed by Christian Nelson Martinez on behalf of BE GREENBRIAR LLC. (Attachments: # 1 Memorandum of Law # 2 Declaration of Christian Martinez # 3 Proposed Order # 4 District Court Civil Cover Sheet # 5 Letter to Clerk re. Transmittal # 6 Certificate of Service # 7 Exhibit # 8 Index) (Martinez, Christian) (Entered: 09/17/2026) |
| 09/17/2026 | | | Receipt of Motion for Withdrawal of Reference( 1−26−42859−jmm) [motion,mwdref] ( 199.00) Filing Fee. Receipt number A24979262. Fee amount 199.00. (re: Doc# 39) (U.S. Treasury) (Entered: 09/17/2026) |

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------- X

In re:

**BE GREENBRIAR LLC,**

Debtor.

---------------------------------------------------- X

Chapter 11
Case No. **1-26-42859-jmm**
Hon. Jil Mazer-Marino

**EMERGENCY MOTION TO WITHDRAW OR PARTIALLY WITHDRAW THE REFERENCE AND FOR EXPEDITED TRANSMITTAL TO THE DISTRICT COURT**

BE Greenbriar LLC (the "Debtor"), by counsel, moves under 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011, and E.D.N.Y. LBR 5011-1 for withdrawal, or at minimum partial withdrawal, of the reference as to the non-core private-right, jury-triable, corporate-authority, consent, fraud, and RICO issues overlapping with the already-filed District Court action, BE Tampa LLC, et al. v. Markovici, et al., Case No. 1:26-cv-05526. The Debtor separately seeks emergency stay relief because withdrawal itself does not stay this case.

**PRELIMINARY STATEMENT**

**1.** New events materially sharpen the need for District Court control over the non-core dispute. On September 11, 2026, the Bankruptcy Court entered ECF No. 34 granting conditional stay relief. That order requires adequate-protection payments of $59,375, recites a first payment date of September 4, 2026, and creates a ten-business-day cure mechanism after a Notice of Default.

**2.** The docket shows BP CM filed a Notice of Default on September 8, 2026, before entry of the written order, and filed proof of service concerning that Notice of Default on September 14, 2026. If an asserted default remains uncured, ECF No. 34 permits BP CM to submit a proposed order modifying the stay as to both BE Greenbriar LLC and BE Union LLC.

**3.** The Debtor does not contend that a withdrawal motion functions as an appeal from ECF No. 34. The Debtor is separately preserving appellate rights and seeking a stay under Bankruptcy Rule 8007. Withdrawal is requested prospectively so that the District Court may adjudicate the non-core private-right claims and the overlapping corporate-authority/consent issues without inconsistent merits determinations.

**4.** Those issues are already before the District Court in Case No. 1:26-cv-05526, filed September 6, 2026. The RICO complaint alleges that internal control actors used disputed authority over BE Tampa, BE Greenbriar and BE Union in connection with rents, bank accounts, company records, lender communications, workout efforts, surrender negotiations, and the foreclosure-consent process.

**5.** The RICO complaint does not presently name BP CM, Varadero, or their counsel as RICO defendants. It expressly reserves amendment if discovery establishes knowing participation. This motion therefore does not ask the District Court to prejudge lender liability. It asks the District Court to control the non-core claims and the common authority/consent issues that directly overlap the District Court action.

**6.** The Section 543 matter remains unresolved. The September 9 hearing was adjourned, and the live docket shows the Section 543 hearing reset to September 30, 2026. The proposed final order would leave the Receiver in control of rents, operations, accounts, and records, while the Debtor must separately satisfy Chapter 11 reporting duties.

**7.** The Receiver's July 2026 financial report, filed as ECF No. 32-2, reflects operating income of approximately $57,765.95, operating expenses of approximately $135,313.13, and negative NOI of approximately $77,547.18, while also reflecting substantial

security, bank-charge, termite, utility, and management expenses. The Debtor has requested estate-specific records because the Receiver controls the underlying operating information.

**8.** Cause exists for partial withdrawal because the disputed private-right claims will require substantial adjudication of federal RICO law, state-law fraud and fiduciary doctrines, corporate authority, jury-trial rights, and facts already pleaded in a pending Article III action. Ordinary Chapter 11 administration may remain with the Bankruptcy Court.

## RELIEF REQUESTED

- Withdraw the reference of the RICO action, Case No. 1:26-cv-05526, to the extent it is or becomes referred to the Bankruptcy Court.
- Withdraw or reserve to the District Court final adjudication of non-core claims and disputed corporate-authority/consent issues that are necessary to the RICO, fraud, conversion, fiduciary-duty, accounting, and damages claims.
- Confirm that the Debtor does not consent to final Bankruptcy Court adjudication of non-core private-right claims and preserves all jury-trial rights.
- Permit the Bankruptcy Court to continue ordinary Chapter 11 administration, including U.S. Trustee compliance, monthly operating reports, case-management conferences, and property-preservation matters, unless separately stayed.
- Expedite transmission under E.D.N.Y. LBR 5011-1 because ECF No. 34 and the filed Notice of Default create an imminent risk of stay termination and foreclosure if an alleged default is not cured.

## RESERVATION REGARDING ECF NO. 34

The Debtor expressly recognizes that ECF No. 34 has already been entered. This withdrawal motion does not ask the District Court to treat withdrawal as a substitute for appellate review. The Debtor separately preserves a timely appeal and seeks stay relief under Bankruptcy Rule 8007.

## CONCLUSION

For these reasons, the Debtor respectfully requests expedited transmittal and withdrawal or partial withdrawal of the reference as set forth above, together with such other relief as is just and proper.

Dated: September 17, 2026

**THE LAW OFFICE OF CHRISTIAN N. MARTINEZ, PLLC**
Counsel for BE Greenbriar LLC
By: **/s/ Christian N. Martinez**
Christian N. Martinez, Esq.
PO Box 3, Chester, New York 10918
(845) 544-9189
christian@cmartinez-law.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------- X

In re:

**BE GREENBRIAR LLC,**

Debtor.

---------------------------------------------------- X

Chapter 11
Case No. **1-26-42859-jmm**
Hon. Jil Mazer-Marino

**MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION TO WITHDRAW OR PARTIALLY WITHDRAW THE REFERENCE**

**PRELIMINARY STATEMENT**

The requested withdrawal should now be narrowly and correctly framed. The Bankruptcy Court has already entered a conditional stay-relief order, ECF No. 34. That order is subject to separate appellate and stay procedures. The present motion asks the District Court to take control of the non-core private-right litigation and overlapping authority/consent issues embodied in the pending RICO action, while leaving ordinary Chapter 11 administration in the Bankruptcy Court.

**FACTUAL DEVELOPMENTS AFTER THE ORIGINAL DRAFT**

**1.** On August 26, 2026, the Bankruptcy Court granted conditional relief from stay and directed submission of an order.

**2.** On September 8, 2026, the docket reflects that BP CM filed a Notice of Default, ECF No. 30.

**3.** On September 11, 2026, the Court entered ECF No. 34. It requires $59,375 adequate-protection payments, recites the first payment due September 4, 2026, and allows BP CM, after service of a Notice of Default and expiration of a ten-business-day cure period, to file an Affidavit of Non-Compliance and submit an order modifying the stay as to both BE Greenbriar and BE Union.

**4.** On September 14, 2026, BP CM filed a certificate of service related to the Notice of Default.

**5.** The Section 543 hearing was adjourned to September 30, 2026. Thus the receiver issue remains pending rather than finally adjudicated on the docket supplied.

**6.** Also pending in the District Court is BE Tampa LLC, et al. v. Markovici, et al., No. 1:26-cv-05526, filed September 6, 2026. The current complaint names Markovici, Frankel, CC Group and John Does; it does not presently assert completed RICO claims against BP CM, Varadero or their counsel.

## ARGUMENT

### I. The District Court may withdraw the reference for cause under 28 U.S.C. § 157(d).

Section 157(d) authorizes the District Court to withdraw a referred case or proceeding, in whole or in part, for cause shown. The principal considerations include the core/non-core character of the dispute, efficient use of judicial resources, uniform administration, delay and cost, prevention of forum shopping, and preservation of jury-trial rights. The present motion is directed to the non-core private-right dispute, not routine Chapter 11 administration.

### II. The pending RICO action presents non-core private-right claims and a jury demand that should remain under Article III control.

The RICO complaint asserts federal RICO and related state-law claims arising from internal control, bank-account, rent, records, management, workout, surrender, and consent conduct. It expressly disclaims an attempt to treat ordinary mortgage enforcement as racketeering or to use the District Court as an appellate court over the Florida foreclosure judgment. It demands a jury trial and preserves the proper estate representative issue.

Because the case was filed after commencement of the bankruptcy cases, a referral question may arise under the EDNY standing order. Withdrawal or a determination that the

RICO action remain before the District Court will avoid duplicative merits determinations and protect the Article III and jury-trial framework.

**III. The corporate-authority and foreclosure-consent issues substantially overlap the RICO action.**

The Debtor's prior objection and Hayum declaration establish a genuine dispute concerning the scope of Markovici's authority to execute a consent that confessed a $16.794 million foreclosure judgment, waived defenses, accepted default interest and fees, and authorized sale. The RICO complaint likewise treats the issue as one of scope of authority, not an allegation that Markovici had no management rights at all. That distinction is important because the February 2025 email record reflects that Hayum later agreed to a resignation after review of the December 2021 letter agreement.

The common issue is therefore whether operational management authority extended to the specific challenged acts and whether any misrepresentation, concealment, conversion, or conflicted conduct occurred. Those are merits questions embedded in the District Court complaint.

**IV. ECF No. 34 creates urgency, but withdrawal is not a substitute for appeal.**

The written conditional stay-relief order creates an immediate enforcement path. It requires monthly adequate-protection payments of $59,375 and allows stay modification after a Notice of Default, a ten-business-day cure period, and an Affidavit of Non-Compliance. The docket shows a Notice of Default was filed September 8 and proof of service filed September 14.

Because the order has already been entered, a party seeking review must preserve appellate rights and seek a stay through the mechanisms provided by Bankruptcy Rules 8002 and 8007. The Debtor does so separately. The existence of that appellate route strengthens, rather

than weakens, the reason to cabin the withdrawal motion to prospective control of the non-core litigation.

**V. Ordinary bankruptcy administration should remain in Bankruptcy Court.**

The September 30 case-management order requires the Debtor to address operations, finances, professionals, a plan timetable, single-asset-real-estate issues, and anticipated adversary proceedings, and requires monthly operating reports. The Debtor does not seek to evade those duties. Partial withdrawal permits the bankruptcy case to continue efficiently while an Article III judge controls the private-right litigation.

**VI. Expedited transmittal is warranted.**

EDNY LBR 5011-1 directs the Clerk to transmit the withdrawal motion and supporting documents to the District Court. Expedited handling is warranted because the conditional stay order and Notice of Default can ripen into foreclosure relief before the disputed non-core issues are resolved.

**CONCLUSION**

The District Court should withdraw or partially withdraw the reference as to the RICO action and overlapping non-core private-right issues, preserve jury-trial and Article III adjudication rights, and leave ordinary Chapter 11 administration with the Bankruptcy Court.

Dated: September 17, 2026

**/s/ Christian N. Martinez**
Christian N. Martinez, Esq.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------ X

In re:

**BE GREENBRIAR LLC,**

Debtor.

------------------------------------------------------ X

Chapter 11
Case No. **1-26-42859-jmm**
Hon. Jil Mazer-Marino

## DECLARATION OF CHRISTIAN N. MARTINEZ IN SUPPORT OF WITHDRAWAL AND EMERGENCY RELIEF

**1.** I am counsel for BE Greenbriar LLC in the above-captioned Chapter 11 case. I submit this declaration based on my review of the Court docket and the documents identified below.

**2.** The Order for Relief was entered July 28, 2026. BP CM filed its motion for relief from stay on July 29, 2026.

**3.** On August 19, 2026, the Debtor filed ECF Nos. 23 and 24 opposing stay relief and disputing the bankruptcy inferences BP CM sought to draw from the April 30, 2026 foreclosure consent.

**4.** On August 26, 2026, the Court granted conditional stay relief and directed submission of an order.

**5.** On September 6, 2026, BE Tampa LLC, BE Greenbriar LLC and BE Union LLC filed a civil RICO complaint in the United States District Court for the Eastern District of New York, Case No. 1:26-cv-05526.

**6.** The current RICO complaint names Simon Markovici, Isaac "Yitzy" Frankel, Creative Capital Group/CC Group and John Does. It does not presently name BP CM, Varadero or their counsel as RICO defendants; it reserves amendment if discovery supports knowing participation.

**7.** On September 8, 2026, the bankruptcy docket reflects that BP CM filed ECF No. 30, a Notice of Default. The complete ECF No. 30 should be reviewed to determine the asserted default, date and manner of service, and cure deadline.

**8.** On September 11, 2026, the Court entered ECF No. 34, Order Granting Conditional Relief from the Automatic Stay. It requires adequate-protection payments of $59,375 and provides a ten-business-day cure procedure after service of a Notice of Default.

**9.** ECF No. 34 states that, if a default is not cured and BP CM files an Affidavit of Non-Compliance, BP CM may submit a proposed order modifying the stay as to both BE Greenbriar and BE Union.

**10.** On September 14, 2026, BP CM filed ECF No. 36, a certificate of service related to ECF No. 30.

**11.** The Section 543 hearing has been adjourned to September 30, 2026. The proposed final receiver order has not been entered on the docket history supplied through September 14, 2026.

**12.** ECF No. 32-2 reflects a July 2026 receiver-prepared income statement showing operating income of $57,765.95, operating expenses of $135,313.13 and NOI of negative $77,547.18. The Debtor has requested timely, estate-specific financial records from the Receiver so that it can comply with operating-report obligations.

**13.** I submit this declaration to support expedited withdrawal or partial withdrawal of the non-core private-right issues and the separate request for a stay pending appeal and pending determination of withdrawal.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 17, 2026

**/s/ Christian N. Martinez**
Christian N. Martinez

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------ X

In re:

**BE GREENBRIAR LLC,**

Debtor.

| |
|---|
| Related Bankruptcy Case: **1-26-42859-jmm** |
| Related Civil Action: **1:26-cv-05526** |
| District Judge: __________ |

------------------------------------------------------ X

**[PROPOSED] ORDER WITHDRAWING OR PARTIALLY WITHDRAWING THE REFERENCE**

Upon the motion of BE Greenbriar LLC under 28 U.S.C. § 157(d), it is ORDERED:

- To the extent BE Tampa LLC, et al. v. Markovici, et al., No. 1:26-cv-05526, has been or would otherwise be referred to the Bankruptcy Court, the reference is withdrawn as to that action.
- The reference is further withdrawn as to final adjudication of non-core private-right claims and jury-triable claims arising from the same alleged internal-control, bank-account, rent, records, management, surrender, and foreclosure-consent conduct.
- This Order does not determine the merits of any RICO, fraud, fiduciary-duty, conversion, or lender-liability theory and does not add any party as a defendant.
- Ordinary administration of In re BE Greenbriar LLC, No. 1-26-42859-jmm, including U.S. Trustee compliance, monthly operating reports, case management, and property-preservation matters, remains referred to the Bankruptcy Court.
- Nothing in this Order vacates or reverses ECF No. 34. Appellate review of that order proceeds under the applicable bankruptcy appellate rules.
- All jury-trial and Article III adjudication rights are preserved.

SO ORDERED.
Dated: _____________, 2026

_________________________________
**United States District Judge**

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

## CIVIL COVER SHEET

This form is REQUIRED for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.

IN RE: Bankruptcy Case No. 1-26-42859-jmm Adv. Pro. No. (if applicable) ____________

**Motion to Withdraw Reference, Bankruptcy Case or Proceeding**

| MOVANTS | OPPOSING PARTIES |
|---|---|
| BE Greenbriar LLC<br>50 Union Avenue, Suite 505<br>Irvington, NJ 07111 | BP CM Acquisition SPV, LLC<br>c/o McCarter & English, LLP<br>Four Gateway Center<br>100 Mulberry Street<br>Newark, NJ 07102 |
| **ATTORNEYS (FIRM NAME, ADDRESS, TEL. NO.)** | **ATTORNEYS (IF KNOWN)** |
| The Law Office of Christian N. Martinez<br>Christian N. Martinez, Esq.<br>P.O. Box 3, Chester, NY 10918<br>Tel. (845) 544-9189<br>christian@cmartinez-law.com | McCarter & English, LLP<br>Joseph Lubertazzi, Jr., Esq.<br>Four Gateway Center, 100 Mulberry Street<br>Newark, NJ 07102<br>Tel. (973) 622-4444<br>jlubertazzi@mccarter.com |

BASIS OF JURISDICTION: Federal Question

CAUSE OF ACTION - 28:1334 Withdrawal of Reference, Bankruptcy (Write brief statement of cause.)

Partial withdrawal/retention of related Civil RICO action and final adjudication of overlapping non-core private-right claims; jury demand.

NATURE OF SUIT: 423 Withdrawal (801)

RELATED CASE(S) IN DISTRICT COURT, IF ANY

DISTRICT JUDGE ____________ DOCKET NUMBER 1:26-cv-05526

*CIVIL CASES ARE DEEMED RELATED IF PENDING CASE INVOLVED:*

*1. PROPERTY INCLUDED IN AN EARLIER NUMBERED PENDING SUIT*
*X 2. SAME ISSUE OF FACT OR GROWS OUT OF THE SAME TRANSACTION*
*3. VALIDITY OR INFRINGEMENT OF THE SAME PATENT COPYRIGHT OR TRADEMARK*

Date: September 17, 2026 Signature of Attorney of Record: Christian N. Martinez
*[or Movant Pro Se]*

***FOR COURT USE ONLY***

APPLYING IFP ________ JUDGE ____________ MAG. JUDGE ____________

**CIVIL COVER SHEET, Motion to Withdraw Reference (cont'd)**

Did the cause of action arise in Nassau or Suffolk County? **NO**

If YES, please indicate which county: ____________________

---

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

X YES NO

Are you currently the subject of any disciplinary action(s) in this or any other state or federal court?

YES (If yes, please explain) ✓ NO

---

---

---

Please provide your bar code and e-mail address below. Your bar code consists of the initials of your first and last name and the last four digits of your social security number, or any other four-digit number registered by the attorney with the Clerk of Court. This information must be provided pursuant to local rule 11.1(b) of the local civil rules.

Attorney Bar Code: 5538053

E-Mail Address: christian@cmartinez-law.com

# THE LAW OFFICE OF CHRISTIAN N. MARTINEZ, PLLC

PO Box 3,
Chester, New York 10918

TELEPHONE (845) 544-9189
Email: Christian@cmartinez-law.com

September 17, 2026

Clerk of Court
United States Bankruptcy Court
Eastern District of New York
271-C Cadman Plaza East, Suite 1595
Brooklyn, New York 11201

Re: **In re BE Greenbriar LLC, Case No. 1-26-42859-jmm**
**Motion to Withdraw or Partially Withdraw the Reference**

Dear Clerk:

Pursuant to E.D.N.Y. Local Bankruptcy Rule 5011-1, enclosed for filing and transmittal to the United States District Court are BE Greenbriar LLC's Emergency Motion to Withdraw or Partially Withdraw the Reference, supporting Memorandum of Law, Declaration of Christian N. Martinez, District Court Civil Cover Letter Sheet, and designated supporting exhibits.

The Debtor respectfully requests prompt transmittal because ECF No. 34 entered September 11, 2026 creates a conditional path to stay modification following default and cure procedures, and the docket reflects a Notice of Default at ECF No. 30.

Please provide the District Court civil case number and the name of the assigned District Judge when available.

Respectfully,

*Christian Martinez*
Christian N. Martinez, Esq.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------ X

In re:

**BE GREENBRIAR LLC,**

Debtor.

Chapter 11
Case No. **1-26-42859-jmm**
Hon. Jil Mazer-Marino

------------------------------------------------------ X

## CERTIFICATE OF SERVICE

I certify that on September 17, 2026, I caused the foregoing Motion to Withdraw or Partially Withdraw the Reference, Memorandum of Law, Declaration, Emergency Motion for Stay Pending Appeal, proposed orders, and supporting exhibits to be served by CM/ECF and/or by the method required by applicable rules upon:

- Joseph Lubertazzi, Jr., Esq., McCarter & English, LLP, counsel for BP CM Acquisition SPV, LLC - jlubertazzi@mccarter.com
- Office of the United States Trustee, Eastern District of New York - USTPRegion02.BR.ECF@usdoj.gov
- David Neiman, Petitioning Creditor, 1620 Vauxhall Rd., Suite 308, Union, NJ 07083
- BE Greenbriar LLC, 50 Union Avenue, Suite 505, Irvington, NJ 07111
- All additional parties entitled to notice as reflected on the live docket at the time of filing.

**/s/ Christian N. Martinez**
Christian N. Martinez, Esq.

# EXHIBIT A

**Current Bankruptcy Docket History through September 14, 2026**

**1-26-42859-jmm** BE GREENBRIAR LLC
**Case type:** bk **Chapter:** 11 **Vol:** i **Judge:** Jil Mazer-Marino
**Date filed:** 06/08/2026 **Date of last filing:** 09/14/2026

# History

| Doc. No. | Dates | Description |
|---|---|---|
| 1 | *Filed:* 06/08/2026<br>*Entered:* 06/10/2026 | Involuntary Petition (Chapter 11) |
| | *Docket Text:* Chapter 11 Involuntary Petition Against a Non-Individual. Fee Amount $1738 Re: BE GRRENBRIAR LLC Filed by Petitioning Creditor(s): David Neiman . (str) | |
| | *Filed & Entered:* 06/10/2026 | Receipt Number and Filing Fee Auto |
| | *Docket Text:* Receipt of Chapter 11 Involuntary Filing Fee - $1,738.00. Receipt Number 10338845. (SR) (admin) | |
| 2 | *Filed & Entered:* 06/10/2026 | Involuntary Summons Issued |
| | *Docket Text:* Involuntary Summons Issued on Debtor BE GREENBRIAR LLC (str) | |
| 3 | *Filed & Entered:* 06/10/2026 | Court's Certificate of Mailing |
| | *Docket Text:* Court's Service List (RE: related document(s)2 Involuntary Summons Issued) (str) | |
| 4 | *Filed:* 06/12/2026<br>*Entered:* 06/13/2026 | BNC Certificate of Mailing with Application/Notice/Order |
| | *Docket Text:* BNC Certificate of Mailing with Application/Notice/Order Notice Date 06/12/2026. (Admin.) | |
| 5 | *Filed & Entered:* 06/16/2026 | Notice of Appearance |
| | *Docket Text:* Notice of Appearance and Request for Notice Filed by Joseph Lubertazzi Jr on behalf of BP CM Aquisition SPV, LLC (Lubertazzi, Joseph) | |
| 6 | *Filed & Entered:* 06/30/2026 | Motion to Authorize/Direct |
| | *Docket Text:* Motion to Authorize/Direct *Custodian to Remain in Possession of Property of The Estate Under Bankruptcy Code Section 543(d)* Filed by Joseph Lubertazzi Jr on behalf of BP CM Aquisition SPV, LLC. (Attachments: # 1 Exhibit 1 - Proposed Order # 2 Declaration of Joshua Chung in Support of Motion # 3 Exhibit A Part 1 to Chung Declaration # 4 Exhibit A Part 2 # 5 Exhibit A Part 3 # 6 Exhibit A Part 4 # 7 Exhibit B to Chung Declaration # 8 Exhibit C to Chung Declaration # 9 Exhibit D to Chung Declaration # 10 Exhibit E # 11 Exhibit F to Chung Declaration # 12 Exhibit G to Chung Declaration # 13 Exhibit H # 14 Exhibit I to Chung Declaration # 15 Exhibit J to Chung Declaration # 16 Exhibit K to Chung Declaration # 17 Exhibit L to Chung Declaration # 18 Exhibit M to Chung Declaration) (Lubertazzi, Joseph) | |
| 7 | *Filed & Entered:* 06/30/2026 | Motion to Authorize/Direct |
| | *Docket Text:* Motion to Authorize/Direct *the Motion for Order Authorizing Custodian to Remain in Possession of Property of The Estate Under Bankruptcy Code Section 543(d) to be Heard on Shortened Time* Filed by Joseph Lubertazzi Jr on behalf of BP CM Aquisition SPV, LLC (RE: related document(s)6 Motion to Authorize/Direct filed by Attorney BP CM Aquisition SPV, LLC). (Attachments: # 1 Proposed Order) (Lubertazzi, Joseph) | |
| 9 | *Filed:* 07/05/2026<br>*Entered:* 07/06/2026 | Involuntary Summons Service Executed |
| | *Docket Text:* Summons Service Executed in an Involuntary Case on BE GREENBRIAR LLC 6/25/2026, Answer Due 7/16/2026 Filed by Mendy Klein **Filed Via Electronic Drop Box** (ajs) | |
| 8 | *Filed & Entered:* 07/06/2026 | Order to Schedule Hearing (Generic) |

| | | |
|---|---|---|
| | *Docket Text:* Order Scheduling Hearing on Lender's Motion for an Order Authorizing Lender to Remain in Possession of Property of the Estate. Ordered,that the Hearing may be held in person, by phone, or by videoconference. Hearing scheduled for 7/13/2026 at 11:00 AM at Courtroom 3529 (Judge Mazer-Marino), Brooklyn, NY. (RE: related document(s)6 Motion to Authorize/Direct filed by Attorney BP CM Aquisition SPV, LLC). Signed on 7/6/2026 (ylr) | |
| 10 | *Filed & Entered:* 07/06/2026 | Affidavit/Certificate of Service |
| | *Docket Text:* Affidavit/Certificate of Service Filed by Joseph Lubertazzi Jr on behalf of BP CM Aquisition SPV, LLC (RE: related document(s)6 Motion to Authorize/Direct filed by Attorney BP CM Aquisition SPV, LLC, 8 Order to Schedule Hearing (Generic)) (Lubertazzi, Joseph) | |
| 11 | *Filed:* 07/10/2026<br>*Entered:* 07/14/2026 | Notice of Appearance |
| | *Docket Text:* Notice of Appearance and Request for Notice Filed by BE GREENBRIAR LLC **Filed Via Electronic Drop Box** (jlk) | |
| 12 | *Filed:* 07/10/2026<br>*Entered:* 07/14/2026 | Affirmation in Opposition |
| | *Docket Text:* Affirmation in Opposition to Motion of BP CM Acquisition Spv, LLC For an Order Pursuant to 11 U.S.C. %C2%A7 543(d) Authorizing the Receiver To Remain in Possession and Control of the Property, And Reservation of Rights Filed by Christian N. Martinez on behalf of BE GREENBRIAR LLC (RE: related document(s)6 Motion to Authorize/Direct filed by Attorney BP CM Aquisition SPV, LLC) (jlk)Modified to edit description of docket text 7/16/2026 (jlk). | |
| | *Filed:* 07/13/2026<br>*Entered:* 07/14/2026 | Hearing Held and Adjourned (Case Owned BK) |
| | *Docket Text:* Hearing Held and Adjourned; Appearances: Sheila Calello Representing Creditor, Christian Martinez Representing Debtor - Schedule hearing to be held on 09/09/2026 at 10:30 AM at Courtroom 3529 (Judge Mazer-Marino), Brooklyn, NY. (RE: related document(s)8 Order Scheduling Hearing on Lenders Motion for an Order Authorizing Lender to Remain in Possession of Property of the Estate (RE: related document(s) [6] Motion to Authorize/Direct Custodian to Remain in Possession of Property of The Estate Under Bankruptcy Code Section 543(d) Filed by Joseph Lubertazzi Jr on behalf of BP CM Aquisition SPV, LLC.) - Granted in Part; Submit Order (tml) | |
| 13 | *Filed:* 07/27/2026<br>*Entered:* 07/28/2026 | Generic Order |
| | *Docket Text:* Interim Order Granting Motion Authorizing Custodian to Remain in Possession of Property of the Estate Under Bankruptcy Code Section 543(d). Ordered, that the Motion is granted on an interim basis until September 11, 2026 and that a Hearing shall be held on September 9, 2026 at 10:30 a.m.(RE: related document(s)6 Motion to Authorize/Direct filed by Attorney BP CM Aquisition SPV, LLC). Signed on 7/27/2026 (Attachments: # 1 Exhibit) (ylr) | |
| 14 | *Filed:* 07/28/2026<br>*Entered:* 07/29/2026 | Order for Relief under Chapter 11 |
| | *Docket Text:* Order for Relief under Chapter 11. Incomplete Filings due by 8/11/2026. Chapter 11 Plan due by 11/25/2026. Disclosure Statement due by 11/25/2026. List of all Creditors Due 8/4/2026. Signed on 7/28/2026 (ylr) | |
| | *Filed & Entered:* 07/29/2026 | Automatic docket of credit card/debit card |
| | *Docket Text:* Receipt of Motion for Relief From Stay( 1-26-42859-jmm) [motion,mrlfsty] ( 199.00) Filing Fee. Receipt number A24847881. Fee amount 199.00. (re: Doc# 16) (U.S. Treasury) | |
| 15 | *Filed & Entered:* 07/29/2026 | Meeting of Creditors Chapter 11 - US Trustee |

| | | | |
|---|---|---|---|
| | *Docket Text:* Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors Filed by Office of the United States Trustee. 341(a) meeting to be held on 8/28/2026 at 12:45 PM at Zoomgov-Khodorovsky:Zoom.us/join,Meeting ID 165 467 51218, Passcode 4477082381, Phone 1 202 807 5265. (Khodorovsky, Nazar) | | |
| 16 | *Filed & Entered:*<br>*Terminated:* | 07/29/2026<br>09/11/2026 | Motion for Relief From Stay |
| | *Docket Text:* Motion for Relief from Stay Fee Amount $199. Filed by Joseph Lubertazzi Jr on behalf of BP CM Aquisition SPV, LLC. (Attachments: # 1 Exhibit 1 - Proposed Order # 2 Exhibit 2 - Declaration of Joshua Chung # 3 Exhibit A Part 1 to Chung Declaration # 4 Exhibit A Part 2 to Chung Declaration # 5 Exhibit A Part 3 to Chung Declaration # 6 Exhibit A Part 4 to Chung Declaration # 7 Exhibit B to Chung Declaration # 8 Exhibit C to Chung Declaration # 9 Exhibit D through G to Chung Declaration # 10 Exhibit H to Chung Declaration # 11 Exhibit I through M to Chung Declaration # 12 Exhibit N Part 1 to Chung Declaration # 13 Exhibit N Part 2 to Chung Declaration # 14 Exhibit N Part 3 to Chung Declaration) (Lubertazzi, Joseph) | | |
| 17 | *Filed & Entered:* | 07/29/2026 | Motion to Authorize/Direct |
| | *Docket Text:* Motion to Authorize/Direct *Motion for Stay Relief to be Heard on Short Notice* Filed by Joseph Lubertazzi Jr on behalf of BP CM Aquisition SPV, LLC (RE: related document(s)16 Motion for Relief From Stay filed by Attorney BP CM Aquisition SPV, LLC). (Attachments: # 1 Proposed Order) (Lubertazzi, Joseph) | | |
| 18 | *Filed:*<br>*Entered:* | 07/31/2026<br>08/01/2026 | BNC Certificate of Mailing with Application/Notice/Order |
| | *Docket Text:* BNC Certificate of Mailing with Application/Notice/Order Notice Date 07/31/2026. (Admin.) | | |
| 19 | *Filed & Entered:* | 08/04/2026 | Amended Notice of Motion/Presentment |
| | *Docket Text:* Amended Notice of Motion/Presentment *(filed in lieu of order shortening notice on motion)*. Objections to be filed on 8/18/2026. Hearing on Objections, if any, will be held on: 8/26/2026 @ 1:30 p.m.. Filed by Joseph Lubertazzi Jr on behalf of BP CM Aquisition SPV, LLC (RE: related document(s)16 Motion for Relief From Stay filed by Attorney BP CM Aquisition SPV, LLC) Order to be presented for signature on 8/25/2026. (Attachments: # 1 Exhibit A - Proposed Order Granting Motion for Relief from Automatic Stay) (Lubertazzi, Joseph) | | |
| 20 | *Filed & Entered:* | 08/05/2026 | Amended Notice of Motion/Presentment |
| | *Docket Text:* Amended Notice of Motion/Presentment *(in Lieu of Order Shortening Notice)*. Objections to be filed on 8/19/2026. Hearing on Objections, if any, will be held on: 8/26/2026 @ 1:30 p.m.. Filed by Joseph Lubertazzi Jr on behalf of BP CM Aquisition SPV, LLC (RE: related document(s)16 Motion for Relief From Stay filed by Attorney BP CM Aquisition SPV, LLC) Hearing scheduled for 8/26/2026 at 01:30 PM at Courtroom 3529 (Judge Mazer-Marino), Brooklyn, NY. (Lubertazzi, Joseph) | | |
| 21 | *Filed:*<br>*Entered:* | 08/07/2026<br>08/08/2026 | BNC Certificate of Mailing - Meeting of Creditors |
| | *Docket Text:* BNC Certificate of Mailing - Meeting of Creditors Notice Date 08/07/2026. (Admin.) | | |
| 22 | *Filed & Entered:* | 08/14/2026 | Affidavit/Certificate of Service |
| | *Docket Text:* Affidavit/Certificate of Service Filed by Joseph Lubertazzi Jr on behalf of BP CM Aquisition SPV, LLC (RE: related document(s)16 Motion for Relief From Stay filed by Attorney BP CM Aquisition SPV, LLC, 20 Amended Notice of Motion/Presentment filed by Attorney BP CM Aquisition SPV, LLC) (Lubertazzi, Joseph) | | |
| 23 | *Filed & Entered:* | 08/19/2026 | Objection |
| | *Docket Text:* Objection *and Opposition* Filed by Christian Nelson Martinez on behalf of BE GREENBRIAR LLC (RE: related document(s)16 Motion for Relief From Stay filed by Attorney BP CM Aquisition SPV, LLC, 17 Motion to Authorize/Direct filed by Attorney BP CM Aquisition SPV, LLC) (Martinez, Christian) | | |
| 24 | *Filed & Entered:* | 08/19/2026 | Declaration |

| | | |
|---|---|---|
| | *Docket Text:* Declaration Filed by Christian Nelson Martinez on behalf of BE GREENBRIAR LLC (RE: related document(s)16 Motion for Relief From Stay filed by Attorney BP CM Aquisition SPV, LLC, 17 Motion to Authorize/Direct filed by Attorney BP CM Aquisition SPV, LLC) (Attachments: # 1 Written Consent) (Martinez, Christian) | |
| 25 | *Filed & Entered:* 08/24/2026 | Brief |
| | *Docket Text:* Brief Filed by Joseph Lubertazzi Jr on behalf of BP CM Aquisition SPV, LLC (RE: related document(s)16 Motion for Relief From Stay filed by Attorney BP CM Aquisition SPV, LLC, 23 Objection filed by Debtor BE GREENBRIAR LLC) (Lubertazzi, Joseph) | |
| | *Filed:* 08/26/2026<br>*Entered:* 08/31/2026 | Hearing Held (Document BK & AP) |
| | *Docket Text:* Hearing Held; (RE: related document(s)16 Motion for Relief from Stay Filed by Joseph Lubertazzi Jr on behalf of BP CM Aquisition SPV, LLC.) - Conditional Relief from Stay Granted; Submit Order (tml) | |
| 26 | *Filed & Entered:* 09/02/2026 | Order Scheduling Initial Case Management Conference |
| | *Docket Text:* Order Scheduling Initial Case Management Conference. Signed on 9/2/2026 Status hearing to be held on 9/30/2026 at 10:00 AM at Courtroom 3529 (Judge Mazer-Marino), Brooklyn, NY. (tml) | |
| 27 | *Filed & Entered:* 09/02/2026 | Declaration |
| | *Docket Text:* Supplemental Declaration of Joshua Chung In Support of Lender's Motion Filed by Joseph Lubertazzi Jr on behalf of BP CM Aquisition SPV, LLC (RE: related document(s)6 Motion to Authorize/Direct filed by Attorney BP CM Aquisition SPV, LLC) (Attachments: # 1 Exhibit A to Supplemental Declaration of Joshua Chung ISO of Lender's Motion) (Lubertazzi, Joseph)Modified on 9/2/2026 (ylr) to edit document description. | |
| 28 | *Filed & Entered:* 09/02/2026 | Notice of Submission of Proposed Order |
| | *Docket Text:* Notice of Submission of Proposed Order Filed by Joseph Lubertazzi Jr on behalf of BP CM Aquisition SPV, LLC (RE: related document(s)13 Generic Order) (Attachments: # 1 Exhibit A - Revised Order # 2 Exhibit B - Redline comparing the Revised Order to Original) (Lubertazzi, Joseph) | |
| 29 | *Filed:* 09/04/2026<br>*Entered:* 09/05/2026 | BNC Certificate of Mailing with Notice/Order |
| | *Docket Text:* BNC Certificate of Mailing with Notice/Order Notice Date 09/04/2026. (Admin.) | |
| 30 | *Filed & Entered:* 09/08/2026 | Notice of Default |
| | *Docket Text:* Notice of Default Filed by Joseph Lubertazzi Jr on behalf of BP CM Aquisition SPV, LLC (RE: related document(s)16 Motion for Relief From Stay filed by Attorney BP CM Aquisition SPV, LLC) (Lubertazzi, Joseph) | |
| 31 | *Filed & Entered:* 09/08/2026 | Letter of Adjournment |
| | *Docket Text:* Letter of Adjournment: Hearing rescheduled from 09/09/2026 to 09/16/2026 Filed by Christian Nelson Martinez on behalf of BE GREENBRIAR LLC (related document(s)6, 16). (Martinez, Christian) | |
| 32 | *Filed & Entered:* 09/08/2026 | Declaration |
| | *Docket Text:* Declaration Filed by Joseph Lubertazzi Jr on behalf of BP CM Aquisition SPV, LLC (RE: related document(s)6 Motion to Authorize/Direct filed by Attorney BP CM Aquisition SPV, LLC) (Attachments: # 1 Exhibit A - TG Receiver 7.1.2026_8.31.2026 # 2 Exhibit - BE Greenbriar-Boone IE and RR Aug 2026) (Lubertazzi, Joseph) | |
| | *Filed:* 09/09/2026<br>*Entered:* 09/13/2026 | Hearing Adjourned Without Hearing (Case Owned BK) |
| | *Docket Text:* Adjourned Without Hearing - Schedule hearing to be held on 09/30/2026 at 10:00 AM at Courtroom 3529 (Judge Mazer-Marino), Brooklyn, NY. (RE: related document(s)8 Order Scheduling Hearing on Lenders Motion for an Order Authorizing Lender to Remain in Possession of Property of the Estate (RE: related document(s) [6] Motion to Authorize/Direct Custodian to Remain in Possession of | |

| | | | |
|---|---|---|---|
| | Property of The Estate Under Bankruptcy Code Section 543(d) Filed by Joseph Lubertazzi Jr on behalf of BP CM Aquisition SPV, LLC.) (tml) | | |
| 33 | *Filed & Entered:* | 09/09/2026 | Letter of Adjournment |
| | *Docket Text:* Letter of Adjournment: Hearing rescheduled from September 9, 2026 at 10am to September 30, 2026 at 10am Filed by Christian Nelson Martinez on behalf of BE GREENBRIAR LLC (related document(s)6). (Martinez, Christian) | | |
| 34 | *Filed & Entered:* | 09/11/2026 | Order on Motion For Relief From Stay |
| | *Docket Text:* Order Granting Conditional Relief from the Automatic Stay (Related Doc # 16) Signed on 9/11/2026. (ylr) | | |
| 35 | *Filed:*<br>*Entered:* | 09/13/2026<br>09/14/2026 | BNC Certificate of Mailing with Application/Notice/Order |
| | *Docket Text:* BNC Certificate of Mailing with Application/Notice/Order Notice Date 09/13/2026. (Admin.) | | |
| 36 | *Filed & Entered:* | 09/14/2026 | Affidavit/Certificate of Service |
| | *Docket Text:* Affidavit/Certificate of Service Filed by Joseph Lubertazzi Jr on behalf of BP CM Aquisition SPV, LLC (RE: related document(s)30 Notice of Default filed by Attorney BP CM Aquisition SPV, LLC) (Lubertazzi, Joseph) | | |



## PACER Service Center

### Transaction Receipt

09/16/2026 12:18:05

| | | | |
|---|---|---|---|
| **PACER Login:** | breslov1 | **Client Code:** | |
| **Description:** | History/Documents | **Search Criteria:** | 1-26-42859-jmm Type: History Docket Text: DisplayDktText |
| **Billable Pages:** | 6 | **Cost:** | 0.60 |

# EXHIBIT B

**ECF No. 34 - Order Granting Conditional Relief from the Automatic Stay**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| BE Greenbriar LLC, | Case No. 1-26-42859 (JMM) |
| Debtor. | |

**ORDER GRANTING CONDITIONAL**
**RELIEF FROM THE AUTOMATIC STAY**

**WHEREAS,** BP CM Acquisition SPV, LLC, (the "Movant") filed the *Motion for Relief from the Automatic Stay Under Bankruptcy Code Section 362(d)* [ECF No. 16] (the "Motion"),[1] with all accompanying exhibits, pertaining to property located at 13214 Bunn Circle, Tampa, Florida and 2301 East Sligh Avenue, Tampa, Florida (the "Mortgaged Property"); and

**WHEREAS,** it appearing that due and sufficient notice of the Motion and the hearing thereon was provided; and

**WHEREAS,** on August 26, 2026, a hearing having been held on the Motion at which the Court considered and overruled any opposition to the relief requested in the Motion, and good cause appearing.

**NOW, THEREFORE**, it is hereby

**ORDERED,** the above-captioned debtor (the "Debtor") shall perform the following obligations (the "Obligations"). The Debtor shall make adequate protection payments in the amount of $59,375 (i.e., the interest accruing on the partial principal balance of the Loan at the rate of 5% *per annum*) with the first payment being due on September 4, 2026 and on the 1st day of each month thereafter. All payments shall be delivered by the due date to the office of McCarter

[1] All capitalized terms not defined herein have the meanings ascribed to them in the Motion.

& English, LLP, c/o Joseph Lubertazzi, Jr., 100 Mulberry Street, Newark, New Jersey 07102; and it is further

**ORDERED,** if the Debtor fails to perform the Obligations timely, Movant may serve a Notice of Default that identifies the Obligations in default. The Notice of Default shall advise that if all defaults are not cured within ten (10) business days after service of the Notice of Default (the "Cure Period"), Movant shall be entitled to relief from the automatic stay. Any Notice of Default shall be served by first class mail or overnight carrier on the Debtor and Debtor's counsel; and it is further

**ORDERED,** if all defaults are not cured within the Cure Period, Movant may file and serve an Affidavit of Non-Compliance on the docket of this case identifying the Obligations in default and attesting to the Debtor's failure to cure the defaults within the Cure Period. The Notice of Default and proof of service of the Notice of Default shall be attached to the Affidavit of Non-Compliance. Upon filing the Affidavit of Non-Compliance, Movant may submit a proposed order modifying the automatic stay with respect to the Debtor and the debtor in the case captioned *In re BE Union LLC*, Case No. 1-26-42858 (JMM) to permit Movant, its agents, assigns, or successors in interest, to exercise their rights and remedies available under applicable law as to the Mortgaged Property.

**Dated: September 11, 2026**
**Brooklyn, New York**

United States Bankruptcy Court Eastern District of New York

Jil Mazer-Marino
Chief United States Bankruptcy Judge

# EXHIBIT C

**ECF No. 23 - Debtor's Objection to Stay Relief (selected opening/argument pages)**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------- X

In re:

**BE GREENBRIAR LLC**

Debtor.

---------------------------------------------------- X

Chapter 11
Case No. **1-26-42859-jmm**
**Objections Due: August 19, 2026**
**Hearing: August 26, 2026 at 1:30 p.m.**

**DEBTOR'S OBJECTION AND OPPOSITION TO BP CM ACQUISITION SPV, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY [ECF NO. 16]; REQUEST FOR EVIDENTIARY HEARING, LIMITED DISCOVERY, AND ALTERNATIVE CONDITIONAL RELIEF**

## PRELIMINARY STATEMENT

1. The Motion asks the Court to authorize immediate foreclosure and permanent loss of the Debtor's principal asset on a record assembled before the Debtor had a meaningful post-order-for-relief opportunity to organize its Chapter 11 affairs. This is an involuntary case. The Debtor did not file the petition. The Order for Relief was signed July 28, 2026, and BP CM filed this Motion on July 29, 2026.

2. BP CM's lack-of-equity and bad-faith theories depend on unresolved assumptions. Its valuation combines two properties owned by two separate debtors into one 120-unit portfolio, without assigning a separate value to Greenbriar or allocating the asserted debt, reserves, advances, rents, and expenses between the two estates. Its bad-faith theory attributes the intent of an involuntary petitioning creditor to the Debtor without evidence that the Debtor directed, solicited, financed, controlled, or colluded in the filing.

3. BP CM also relies on an alleged foreclosure consent as proof that the Debtor abandoned the property, conceded lack of equity, and admitted that reorganization was impossible. The Debtor does not ask this Court to vacate the Florida judgment. But the consent is

not self-authenticating proof of corporate authority or of every bankruptcy inference BP CM seeks. BP CM's exhibit shows Simon Markovici's signatures for both Greenbriar and Union, leaves the printed Name and Title lines blank, and attaches no member consent, manager vote, Independent Director approval, or other contemporaneous authority instrument.

4. The governing documents make authority at least genuinely disputed. BE Tampa LLC is Greenbriar's sole member. Greenbriar's agreement identifies three initial managers, an Independent Director, and two Authorized Signatories for acquisition and mortgage-loan documents. It gives managers broad authority and excludes an ordinary property sale from the definition of Material Action, but it also imposes special-purpose and Independent Director protections for specified extraordinary actions. The interaction of those provisions with a paper that confessed a $16.79 million judgment, waived every defense, admitted every allegation, approved default interest, late charges, advances, and fees, and authorized immediate judicial sale requires evidence, not assumption.

5. There is no immediate collateral emergency. A court-appointed Receiver already controls possession, rents, leases, operations, and property-level finances. This Court has continued that arrangement through September 11, 2026 and scheduled a further receiver hearing for September 9, 2026. BP CM remains protected while the Court permits a short process to obtain the receiver accounting, separate allocations, valuation testimony, and authority evidence.

6. BP CM's own valuation materials also undermine permanent-futility arguments. They present a stabilized 90% occupancy scenario with projected annual net operating income of approximately $890,401 at takeover, $1,037,111 in fiscal year one, and $1,061,425 in fiscal year two, together with positive projected cash flow before debt service. Those are BP CM's

projections, not the Debtor's. They require testing but establish material rehabilitation and income-producing potential.

7. The Motion should be denied. Alternatively, the Court should preserve the Receiver arrangement, deny relief against the separate Union estate, refuse to waive Rule 4001(a)(4), permit limited discovery, and set an evidentiary hearing after the Debtor has a short opportunity to present a concrete refinancing, capital, controlled-sale, or other reorganization proposal.

## RELEVANT RECORD

### A. This is an involuntary case, and the Motion followed immediately after the Order for Relief.

8. David Neiman filed the involuntary Chapter 11 petition on June 8, 2026. The Debtor did not commence this case voluntarily. (Exs. A and H.)

9. Before entry of the Order for Relief, Christian N. Martinez appeared for the Debtor and filed an opposition to BP CM's earlier motion concerning the Receiver. The docket contradicts the categorical assertion that the Debtor was completely absent. (Ex. A.)

10. The Court entered an interim order allowing the Receiver to remain in possession through September 11, 2026 and scheduled a further hearing for September 9, 2026. (Ex. A; ECF No. 16 at paragraph 24.)

11. The Order for Relief was signed July 28, 2026. BP CM filed the stay-relief Motion on July 29, 2026 with fourteen attachments. The first meeting of creditors is scheduled for August 28, 2026, after the August 26 stay-relief hearing. (Exs. A, G, and H.)

### B. The Receiver arrangement protects the properties and rents.

12. The Florida receivership order authorized the Receiver to possess and operate both properties, collect rents, manage leases and finances, control relevant accounts, and

preserve the collateral. BP CM acknowledges that this Court's interim order permits the Receiver to manage the property, collect all rents, retain all powers, and perform all acts authorized by the receivership order. (ECF No. 16 at paragraph 24; Ex. A.)

13. The Debtor does not seek immediate operational turnover before the September 9 hearing. It proposes that the Receiver remain temporarily, keep rents segregated, preserve insurance and tenant services, pay necessary ordinary property expenses, and provide transparent separate accountings for Greenbriar and Union.

14. Because possession and cash flow are controlled by a court-appointed Receiver, BP CM identifies no new post-order-for-relief act by the Debtor threatening the collateral. Immediate foreclosure is unnecessary during the short period required to complete the record.

**C. BP CM combines two debtors and two properties.**

15. BE Greenbriar LLC and BE Union LLC are separate Florida limited liability companies and separate Chapter 11 debtors. Greenbriar owns 13214 Bunn Circle; Union owns 2301 East Sligh Avenue. BE Tampa LLC is Greenbriar's sole member and is the ownership entity behind both property companies. (Exs. B and C.)

16. The Motion repeatedly describes Greenbriar's alleged sole asset as one 120-unit complex encompassing both addresses. The Broker Opinion of Value likewise combines Greenbriar and Willow Square into one portfolio. (ECF No. 16 at paragraphs 1, 8, 31-32; Ex. E.)

17. BP CM supplies no separate current valuation for Greenbriar or Union and no property-specific allocation of principal, regular interest, default interest, late charges, receiver expenses, protective advances, reserves, escrows, rents, taxes, insurance, or operating expenses.

**D. BP CM's own valuation shows rehabilitation potential.**

18. The Broker Opinion of Value presents an as-is combined value range of approximately $9.9 million to $10.5 million and an as-is occupancy of approximately 33%. (Ex. E.)

19. The same document presents a 90% stabilized scenario with projected net operating income of approximately $890,401 at takeover, $1,037,111 in fiscal year one, and $1,061,425 in fiscal year two. It also projects positive cash flow before debt service of approximately $890,401, $912,111, and $936,425. (Ex. E.)

20. The stabilized pricing analysis presents a combined portfolio range of approximately $13.1 million to $13.7 million. (Ex. E.)

21. The Debtor does not offer those figures as conclusive proof of present equity. They do refute the categorical assertion that stabilization, controlled sale, refinancing, or another reorganization path is necessarily futile and demonstrate why testimony from the valuation professional and production of the work file are necessary.

**E. The alleged consent is facially incomplete as proof of corporate authority.**

22. The Second Amended Consent Final Judgment states that, through consent, the parties agreed that BP CM's allegations were proven and fixes indebtedness at $16,794,016.42, including regular interest, default interest, late charges, receiver fees, a $350,000 protective advance, costs, and attorneys' fees. (Ex. D.)

23. The attached consent waives the borrowers' right to contest foreclosure and authorizes BP CM to file the consent with the proposed judgment. (Ex. D.)

24. The signature page shows Simon Markovici's signature for both entities, dated April 30, 2026. The printed Name and Title lines are blank, and no corporate authority instrument is attached. (Ex. D.)

25. BE Tampa's agreement grants managers broad authority but also imposes unanimous-manager requirements for covered actions costing $50,000 or more and member-consent restrictions for certain extraordinary acts, including confession of judgment against BE Tampa. Greenbriar's agreement separately identifies BE Tampa as sole member; Yisrael Hayum, Simon Markovici, and Pini Markovits as initial managers; C. Anthony Shippam as Independent Director; and Yisrael Hayum and Pini Markovits as Authorized Signatories for acquisition and mortgage-loan documents. (Exs. B and C.)

26. The Debtor acknowledges that Greenbriar's agreement grants broad manager authority and says an ordinary property sale is not itself a Material Action. That does not resolve this record. The challenged paper did more than arrange an ordinary sale: it confessed a $16.79 million judgment, waived all defenses, admitted every allegation, approved fees and default charges, and authorized immediate judicial sale. The absence of the original authority package and contemporaneous approvals presents disputed factual and legal issues.

## ARGUMENT

**I. BP CM has not carried its burden under 11 U.S.C. sections 362(d)(2) and 362(g).**

27. Section 362(d)(2) requires proof both that the Debtor lacks equity in the property and that the property is not necessary to an effective reorganization. Under section 362(g), BP CM bears the burden on equity. See In re Kolnberger, 603 B.R. 253, 269 (Bankr. E.D.N.Y. 2019).

28. BP CM does not supply estate-specific proof. It combines Greenbriar and Union, values them as one portfolio, and asserts one combined judgment amount. Without separate property valuations and a defensible allocation of the secured claim, advances, credits, reserves, and expenses, the Court cannot determine Greenbriar's equity.

29. The Broker Opinion of Value is not supported by sworn testimony from its author. BP CM's declarant is not the valuation professional. The professional has not testified concerning qualifications, inspection, methodology, assumptions, comparables, completed renovations, separate allocations, or the Receiver's later operations.

30. At minimum, BP CM should produce a separate valuation for each property, a current payoff statement, complete loan ledger, reserve and escrow statements, property-specific advance and expense allocations, current Receiver accounting, and current separate rent rolls and occupancy reports.

**II. The Debtor has not had a reasonable opportunity to demonstrate an effective reorganization.**

31. United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 375-76 (1988), requires a reasonable possibility of a successful reorganization within a reasonable time. The showing becomes more demanding as a case progresses. Here, the Motion was filed one day after the Order for Relief was signed, before the section 341 meeting and before the Debtor could obtain records controlled by the Receiver and third parties.

32. The Debtor has not had a reasonable opportunity to obtain the Receiver's books, reconcile Greenbriar and Union, test BP CM's claim and valuation, identify reserves and credits, solicit financing or capital, obtain a controlled-sale proposal, or prepare a plan. The docket sets November 25, 2026 as the plan and disclosure-statement deadline. BP CM seeks to eliminate the principal asset before the first meeting of creditors and months before that deadline. (Ex. A.)

33. The Debtor proposes a definite process: the Receiver remains in place; complete accountings and valuation discovery are produced; the Debtor completes United States Trustee and operating-report obligations; and by a date fixed by the Court the Debtor presents a

preliminary written proposal for refinancing, capital contribution, structured sale, or other plan treatment.

34. BP CM's own stabilized model provides record evidence that the combined properties can generate substantial positive net operating income and cash flow after stabilization. That does not guarantee confirmation, but it prevents a finding at the start of this involuntary case that reorganization is categorically impossible.

**III. BP CM has not established bad faith or other cause under section 362(d)(1).**

35. Cause under section 362(d)(1) depends on the particular circumstances. Sonnax Industries, Inc. v. Tri Component Products Corp., 907 F.2d 1280, 1286 (2d Cir. 1990). Bad faith can constitute cause, but it must be supported by facts.

36. BP CM relies on In re C-TC 9th Avenue Partnership, 113 F.3d 1304, 1311 (2d Cir. 1997), including timing and intent to frustrate foreclosure. Those factors cannot simply be transplanted onto an involuntary debtor. The Debtor did not choose the petition date. BP CM presents no communication, agreement, payment, or other evidence that the Debtor solicited, directed, controlled, or colluded in David Neiman's filing.

37. BP CM's statement that the petitioning creditor may be an insider because he notarized loan documents is speculation. A notarial act does not establish control, insider status, collusion, or agreement to misuse bankruptcy. If BP CM contends the involuntary petition was collusive or defective, it may seek relief on a proper record.

38. The docket also refutes the claim that the Debtor never participated: counsel appeared and filed opposition before the Order for Relief. Any remaining corporate-authority dispute should be decided through documents and testimony, not permanent loss of the estate's asset by default. (Ex. A; Hayum Declaration.)

39. Existing collateral protection further defeats present cause. The Receiver operates the properties and controls rents. The Debtor proposes continued segregation, insurance, reporting, and no use of cash collateral without consent or order. BP CM identifies no immediate postpetition waste or diversion by the Debtor.

**IV. The consent cannot be treated as conclusive bankruptcy evidence of abandonment or inability to reorganize.**

40. The Debtor acknowledges the Florida judgment and does not ask this Court through this opposition to review or vacate that judgment. Any request to modify it will be presented to the appropriate Florida court.

41. BP CM seeks more than recognition of the judgment. It asks this Court to infer that the Debtor voluntarily abandoned the property, conceded lack of equity, admitted it could never reorganize, waived investigation of debt and fees, and acted in bad faith by remaining in Chapter 11. Those additional bankruptcy inferences are disputed.

42. BP CM should produce the original signed consent, complete signature package, all resolutions and authority documents, communications concerning preparation and execution, documents supplied to the Florida court concerning authority, and communications concerning any management dispute known to BP CM.

43. The Court can respect the Florida judgment while declining to treat disputed authority as an uncontested bankruptcy admission. The appropriate solution is to preserve the status quo, permit a prompt Florida application if appropriate, and decide stay relief on a complete record.

**V. Relief cannot be entered against BE Union LLC through a motion filed only in Greenbriar.**

44. The Motion is captioned and filed only in this Greenbriar case. BP CM's proposed order nevertheless states that it will apply with the same force in In re BE Union LLC, Case No. 1-26-42858-jmm and lift Union's stay. (Ex. F.)

45. Union is a separate debtor with a separate estate and property. Federal Rules of Bankruptcy Procedure 4001(a)(1) and 9014 require a motion, service, reasonable notice, and an opportunity to be heard before relief is entered against that estate.

46. A proposed order cannot enlarge the motion and notice into relief against another estate. All Union relief should be denied without prejudice to a separately filed and served motion supported by Union-specific evidence.

**VI. The Rule 4001(a)(4) 14-day stay must not be waived.**

47. Rule 4001(a)(4) ordinarily stays a stay-relief order for 14 days. BP CM asks to eliminate that protection and proceed immediately. (Ex. F.)

48. Waiver is unjustified because the Receiver remains in possession, material valuation and authority disputes remain, the proposed order reaches two estates, and immediate foreclosure would create irreversible consequences before review or emergency relief could be sought.

49. Even if the Court grants some stay relief, the 14-day protection should remain in effect.

**VII. Disputed facts require limited discovery and an evidentiary hearing.**

Federal Rule of Bankruptcy Procedure 9014(d) requires testimony on disputed material facts to be taken in the same manner as in an adversary proceeding. The Debtor requests narrowly tailored production and testimony concerning:

- The current payoff, complete loan ledger, default-interest calculations, late charges, fees, advances, credits, reserves, and escrows.
- Separate Greenbriar and Union Receiver accountings, bank accounts, rent rolls, occupancy, leases, collections, expenses, and cash balances.
- The Colliers work file and testimony from the valuation professional, including separate property allocations and assumptions.
- The original foreclosure-consent package, claimed authority, resolutions, approvals, and communications concerning preparation and use of the consent.

**VIII. Alternative conditional relief protects BP CM while preserving the estate.**

If the Court does not deny the Motion, the Debtor proposes:

- Adjourn final determination to September 9, 2026 or another prompt date and continue the Receiver arrangement.
- Keep all rents under Receiver control, with no Debtor use absent consent or court order.
- Require continued insurance, tenant services, ordinary expenses, preservation, and no transfer or further encumbrance.
- Require separate Greenbriar and Union accounts, ledgers, rent rolls, occupancy reports, budgets, and operating statements.
- Require a complete interim Receiver accounting and BP CM production of the current payoff, ledger, reserves, escrows, allocations, and Colliers work file.
- Allow focused depositions and permit the Debtor to supplement with valuation, authority evidence, and a preliminary restructuring, financing, capital, or controlled-sale proposal.
- Permit BP CM to renew promptly if the Debtor misses court-imposed milestones.
- Reserve all rights concerning the Florida judgment, claim amount and allocation, liens, cash collateral, adequate protection, Receiver conduct, and plan treatment.

## CONCLUSION

The Debtor requests an order denying the Motion; denying all relief against BE Union LLC without prejudice; denying waiver of Rule 4001(a)(4); directing limited discovery and an evidentiary hearing; alternatively preserving the Receiver arrangement subject to the stated conditions; granting leave to supplement; and granting such other relief as the Court deems just.

Dated: August 19, 2026
New York, New York

Respectfully submitted,

The Law Office of Christian N. Martinez
Counsel for BE Greenbriar LLC

**/s/ Christian N. Martinez**
Christian N. Martinez
P.O. Box 3
Chester, New York 10918
Telephone: (845) 544-9189
Email: christian@cmartinez-law.com

## CERTIFICATE OF SERVICE

I certify that on August 19, 2026, I caused the foregoing document and its attachments to be filed through the Court's CM/ECF system, which will transmit notice to registered users, including counsel for BP CM Acquisition SPV, LLC and the Office of the United States Trustee. I also caused a copy to be served by email on Joseph Lubertazzi, Jr. at jlubertazzi@mccarter.com and by first-class mail on:

David Neiman
1620 Vauxhall Road, Suite 308
Union, New Jersey 07083

**/s/ Christian N. Martinez**
Christian N. Martinez

# EXHIBIT D

**ECF No. 24 - Declaration of Yisrael Hayum and Written Consent**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------- X

In re:

**BE GREENBRIAR LLC**

Debtor.

---------------------------------------------------- X

Chapter 11

Case No. **1-26-42859-jmm**

**Objections Due: August 19, 2026**

**Hearing: August 26, 2026 at 1:30 p.m.**

## DECLARATION OF YISRAEL HAYUM IN OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY

## <u>DECLARATION</u>

1. My name is Yisrael Hayum. The executed BE Greenbriar LLC operating agreement identifies me as an initial manager and as an Authorized Signatory for the acquisition and mortgage-loan documents. I submit this declaration from personal knowledge in opposition to BP CM Acquisition SPV, LLC's Motion for Relief from the Automatic Stay.

2. BE Tampa LLC is the sole equity member of BE Greenbriar LLC. BE Tampa's purpose includes owning the membership interests in BE Greenbriar LLC and BE Union LLC.

3. The Greenbriar agreement identifies three initial managers: me, Simon Markovici, and Pini Markovits. It identifies C. Anthony Shippam as Independent Director and springing member.

4. I reviewed the Consent to Entry of Consent Final Judgment of Foreclosure dated April 30, 2026 that BP CM filed in the Florida foreclosure case and again filed in this bankruptcy case.

5. The consent bears Simon Markovici's handwritten signature for both BE Greenbriar LLC and BE Union LLC. It does not identify his printed name or title for either

entity, and no company resolution, member consent, manager consent, or Independent Director consent is attached to the filed consent.

6. I did not sign that consent.

7. I did not authorize Simon Markovici to sign my name or to sign the consent on my behalf.

8. I did not vote as a Greenbriar manager to approve the confession of judgment, waiver of defenses, amount of default interest, late charges, protective advances, receiver fees, attorneys' fees, or immediate foreclosure sale reflected in the consent judgment.

9. I did not execute a written consent, in my capacity connected to BE Tampa or Greenbriar, authorizing Simon Markovici to confess the foreclosure judgment on behalf of the companies.

10. To the best of my knowledge, no prior written consent of BE Tampa members holding at least 55% of the units was provided to approve the confession of judgment reflected in the consent judgment.

11. I dispute that BE Greenbriar LLC voluntarily abandoned its property or conceded that no restructuring, refinancing, controlled sale, or reorganization was possible.

12. The bankruptcy petition was involuntary. I did not file it. To the best of my knowledge, BE Greenbriar LLC did not direct or authorize David Neiman to file it.

13. I support maintaining the Receiver temporarily so tenants, insurance, rents, and operations remain protected while a full accounting and separate Greenbriar and Union records are produced.

14. I support a short court-supervised period to obtain the Receiver's records, test BP CM's valuation and claim allocations, and pursue refinancing, capital, structured sale, or other Chapter 11 treatment that may preserve value.

15. I have personally reviewed every paragraph of this declaration and state that each is true and correct.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on August 19, 2026.

Yisrael Hayum

**WRITTEN CONSENT OF BE TAMPA LLC, AS SOLE MEMBER OF BE GREENBRIAR LLC**

Effective as of August 19, 2026

BE Tampa LLC, as sole member of BE Greenbriar LLC (the "Company"), adopts these resolutions:

1. Yisrael Hayum is appointed the Company's authorized representative and litigation representative.

2. The retention of The Law Office of Christian N. Martinez and Christian N. Martinez as bankruptcy counsel is approved and ratified, including prior protective filings and appearances.

3. The authorized representative and counsel may oppose stay relief, request discovery and accountings, pursue appropriate Florida-court relief, negotiate subject to further required approval, and take reasonable steps to protect the estate.

4. The Company disputes and does not ratify the April 30, 2026 foreclosure consent or any purported waiver, confession of judgment, admission of abandonment, or surrender of rights.

5. No settlement, consent to foreclosure, transfer of title, dismissal with prejudice, or waiver of material rights is authorized without further written approval required by governing documents and law.

BE TAMPA LLC, Sole Member of BE GREENBRIAR LLC

By: [signature]
Name: Yisrael Hayum
Title: Authorized Litigation Representative
Date: 8/19/26

The BE Tampa member consent has been signed by members holding at least 55.00 units and counsel has confirmed effectiveness.

# EXHIBIT E

**District Court RICO Complaint - Case No. 1:26-cv-05526**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------- X

**BE TAMPA LLC,**
**BE GREENBRIAR LLC, and**
**BE UNION LLC,**
by and through a duly authorized representative or special litigation representative, subject to final written authorization and bankruptcy-estate authority,

Plaintiffs,

-v-

**SIMON MARKOVICI a/k/a SIMON MARKOWITZ;**
**ISAAC "YITZY" FRANKEL;**
**CREATIVE CAPITAL GROUP, also known as CC GROUP (exact legal form presently unknown); and**
**JOHN DOES 1-20,**

Defendants.
----------------------------------------------------- X

Case No. ____________________

**COMPLAINT AND JURY DEMAND**

1. Civil RICO - 18 U.S.C. § 1962(c)
2. RICO Conspiracy - 18 U.S.C. § 1962(d)
3. Breach of Operating Agreement
4. Breach of Fiduciary and Managerial Duties
5. Aiding and Abetting Breach of Duty
6. Fraud / Fraudulent Concealment
7. Civil Conspiracy
8. Conversion / Misappropriation
9. Accounting and Equitable Tracing
10. Unjust Enrichment / Constructive Trust

Plaintiffs BE Tampa LLC, BE Greenbriar LLC, and BE Union LLC (collectively, "Plaintiffs"), by and through counsel, allege as follows:

## NATURE OF THE ACTION

1. This action concerns a coordinated course of conduct by internal control actors who obtained and exercised disputed authority over BE Tampa LLC and its two property-owning subsidiaries, BE Greenbriar LLC and BE Union LLC, and used that control to affect rents, bank accounts, company records, lender communications, management decisions, workout efforts, surrender negotiations, and the foreclosure-consent process.

2. The properties are the Greenbriar Villas apartment complex at or near 13214 Bunn Circle, Tampa, Florida, and the Willow Square apartment complex at or near 2301 East Sligh Avenue, Tampa, Florida (together, the "Properties").

3. Plaintiffs allege that Defendants used materially false and misleading representations concerning corporate authority, repeated interstate emails and electronic communications, a formal mailed deed-in-lieu notice, electronic bank instructions and transfers, and the intended and reasonably foreseeable use of lender, counsel, and court transmission systems to obtain, preserve, or exploit control over Plaintiffs' money and property.

4. The central authority issue arises from the April 30, 2026 Consent to Entry of Consent Final Judgment of Foreclosure (the "Foreclosure Consent"). The filed signature page appears to bear Simon Markovici's signature for both BE Greenbriar LLC and BE Union LLC, while the printed Name and Title lines are blank and no member resolution, manager resolution, Independent Director consent, authority certificate, or other approval instrument is attached to the filed page.

5. Through the Foreclosure Consent, the Borrowers purportedly consented to final foreclosure judgment, waived the right to contest foreclosure, authorized filing of the Consent with a proposed judgment, accepted substantial contract interest, default interest, late fees, receivership fees, protective advances, costs, and attorneys' fees, and exposed the Properties to sale, possession, deficiency, and credit-bid consequences.

6. On June 4, 2026, the Florida court entered a Second Amended Consent Final Judgment of Foreclosure fixing indebtedness at $16,794,016.42 and resetting the foreclosure sale for June 29, 2026. BP CM Acquisition SPV, LLC later relied on the same consent narrative in Bankruptcy Court, asserting that the Debtors had voluntarily consented to receivership and foreclosure and had thereby conceded that they could not satisfy the mortgage debt.

7. Before the Foreclosure Consent, Plaintiffs and their representatives repeatedly proposed concrete means to preserve the Properties, including replacement management, new

capital, a rate-cap solution, an extension or modification, refinancing, and potential property sales. Plaintiffs allege that those proposals were not fairly or consistently pursued, while lender-side participants continued a separate track with Markovici despite prior notice that his authority was disputed and that operations, rent collection, and records had materially deteriorated.

8. Plaintiffs further allege, upon information and belief, that Markovici's effort to obtain a personal guaranty release in the approximate range of $650,000 to $750,000 supplied him with a personal motive to cooperate in surrendering company rights and supplied lender-side participants with a financial reason to prefer his track over the rescue proposals presented by the other company stakeholders.

9. Plaintiffs seek recovery for independently actionable business and property injury, including all rents, deposits, reserves, escrow funds, operating funds, and other company money improperly taken, diverted, concealed, transferred, spent, or applied by Markovici or persons acting with him; lost net operating income; incremental repair and stabilization costs; loss of concrete workout, refinancing, or sale opportunities; and accounting and tracing expenses.

10. Plaintiffs do not allege that lawful mortgage enforcement, settlement negotiations, or ordinary litigation are themselves racketeering, and they do not ask this Court to sit as an appellate court over the Florida foreclosure judgment. The claims are directed to independent fraudulent communications, diversion or misuse of company property, concealment, conflicted conduct, and resulting business and property injury.

## JURISDICTION, VENUE, PLAINTIFF AUTHORITY, AND ARBITRATION

11. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Counts I and II arise under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968.

12. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the related state-law claims because they arise from the same nucleus of operative facts concerning company control, bank accounts, rents, management, the deed-in-lieu process, the Foreclosure Consent, and resulting economic injury.

13. The Enterprise and the challenged conduct affected interstate commerce. The Properties are in Florida; the parties and participants operated in New York and other states; the loan, lender, banks, counsel, and receivership involved interstate activity; and the scheme used interstate emails, mail, electronic banking systems, and court filing systems.

14. Venue is proper in this District under 28 U.S.C. § 1391 and 18 U.S.C. § 1965 because a substantial part of the Enterprise's communications, guaranty-related activity, financial and management dealings, and related bankruptcy proceedings occurred in or were directed through New York, and one or more Defendants transacted affairs in this District or the surrounding New York metropolitan area.

15. BE Greenbriar LLC and BE Union LLC are debtors in related Chapter 11 proceedings pending in the United States Bankruptcy Court for the Eastern District of New York. Plaintiffs bring this action by and through a duly authorized representative or special litigation representative, subject to final written authorization and bankruptcy-estate authority and to substitution of the proper estate representative if required by the Bankruptcy Court.

16. Multiple members and investors have stated from personal knowledge that they did not approve, authorize, or ratify the April 30, 2026 Foreclosure Consent, were not asked to approve it, were not provided the document before it was filed, and were not told that it would be submitted to a court and used as the basis for a foreclosure judgment.

17. The December 2021 Letter Agreement was executed by Yisrael Hayum, Pini Markovits, and Simon Markovici as the defined "Parties." Paragraph 7 provides for Beth Din arbitration of disputes "among the parties hereto" concerning the Letter or the Company. BE Tampa LLC, BE Greenbriar LLC, and BE Union LLC are not identified as the "Parties" and did not sign the Letter in their own names.

18. Plaintiffs do not concede that the corporate Plaintiffs agreed to arbitrate these independent federal RICO, fraud, conversion, accounting, and company-property claims. Plaintiffs do not rely on enforcement of the Letter Agreement as the source of their RICO rights. The individual signatories to the Letter are not named as Plaintiffs in their personal capacities, and this Complaint seeks recovery of corporate money and property and enforcement of rights belonging to the corporate Plaintiffs. To the extent any state-law claim is later found arbitrable, Plaintiffs request that the Court sever or stay only that claim while retaining jurisdiction over claims that are not subject to arbitration.

**PARTIES**

19. Plaintiff BE Tampa LLC is a Florida limited liability company and is the parent and sole member of BE Greenbriar LLC and BE Union LLC according to the governing organizational documents.

20. Plaintiff BE Greenbriar LLC is a Florida limited liability company that owns or owned the Greenbriar Villas property.

21. Plaintiff BE Union LLC is a Florida limited liability company that owns or owned the Willow Square property.

22. Defendant Simon Markovici, also referenced in documents as Simon Markowitz, was identified in governing documents as a manager and guarantor. He later asserted extensive management or takeover authority and participated in lender communications, bank and records

control, deed-in-lieu activity, personal guaranty negotiations, and the Foreclosure Consent process.

23. Defendant Isaac “Yitzy” Frankel is alleged to be a principal or participant in Creative Capital Group / CC Group and to have participated in disputed management, communications, property-management decisions, records control, and related Enterprise activity.

24. Defendant Creative Capital Group, also known as CC Group, is the business entity or group of related entities through which Markovici, Frankel, employees, and agents allegedly conducted management, accounting, banking, records, and communications activity affecting Plaintiffs and the Properties. Its exact legal form and full legal name are presently unknown and will be confirmed through discovery.

25. John Does 1-20 are persons or entities whose identities may be revealed through the Foreclosure Consent transmission records, bank records, corporate records, lender records, guaranty-release records, receiver records, and discovery, and who knowingly participated in the conduct alleged herein.

26. David Horowitz is not named as a Defendant. He is referenced only where existing records identify him as a CC Group employee or records custodian from whom payroll, bank, accounting, or company records were requested. Plaintiffs reserve the right to seek appropriate relief against any person only if later evidence establishes personal knowing participation.

27. BP CM Acquisition SPV, LLC, Varadero Capital, L.P., and their representatives are not presently named as Defendants. Their conduct is alleged as relevant background, notice, motive, causation, and foreseeable use of the challenged authority representations. Because

Plaintiffs do not presently possess the native Foreclosure Consent routing file, any guaranty-release agreement or payment proof, the lender ledger, or the lender-side authority communications necessary to plead knowing participation with particularity, this Complaint does not yet assert a completed RICO claim against the lender-side participants. Plaintiffs reserve the right to amend if discovery establishes knowing agreement, substantial assistance, or participation in the operation or management of the scheme.

## GOVERNING DOCUMENTS AND THE SCOPE OF AUTHORITY

### A. Operating Agreements and Reserved Company Action

28. The BE Tampa operating agreement, amendments, and member schedules govern the parent company's management and voting. The governing documents identify Yisrael Hayum, Simon Markovici, and Pini Markovits as initial managers, but manager authority was subject to member-consent requirements, additional manager approval for specified actions or expenditures, restrictions on confession of judgment, company-purpose limitations, and other extraordinary-action provisions.

29. The available First Amendment defines "Consent of the Members" as prior written consent of members, voting as a single class, holding at least fifty-five percent of the outstanding Equity Units.

30. The BE Tampa operating agreement specifically includes confession of judgment in threatened or pending litigation among actions requiring member consent. Plaintiffs allege that consenting to final foreclosure judgments on both principal assets, waiving all defenses, accepting substantial default charges and fees, and authorizing sale were extraordinary, non-ordinary-course acts.

31. The BE Greenbriar operating agreement identifies BE Tampa LLC as sole member and contains Special Purpose Entity and Independent Director provisions restricting specified Material Actions and requiring approvals beyond unilateral action by one manager.

32. The BE Union governing documents likewise govern authority over that entity and its principal asset. Plaintiffs allege that surrender, foreclosure consent, waiver, confession of judgment, and disposition of its principal asset required approval beyond the unilateral decision of a single manager.

33. The governing documents identify Yisrael Hayum and Pini Markovits as Authorized Signatories for the acquisition and original mortgage-loan documents. That designation is relevant to whether Markovici could later execute extraordinary foreclosure documents on behalf of both Property Companies without additional approval.

**B. The December 2021 Letter Agreement**

34. The December 2021 Letter Agreement was entered into by Hayum, Pini Markovits, and Markovici individually. It granted Markovici important consent and control rights, required that he become a bank signatory, and provided for a "full management takeover" upon specified events.

35. Paragraph 4 defined "full management takeover" to include the right to make decisions concerning the Companies, Properties, and Loans "as if Markovici is the sole manager," to appoint a property manager, and to prioritize equity-contributing members.

36. The Letter did not state that Markovici became the sole member of BE Tampa, Greenbriar, or Union, acquired the members' voting interests, or automatically supplied every member vote otherwise required for a confession of judgment or surrender of the Properties.

37. Paragraph 2 of the Letter also stated that limitations on fiduciary duties in the operating agreements would not eliminate fiduciary duties available under New York common

law or statute. Plaintiffs allege that no provision authorized fraud, bad faith, willful misconduct, conversion, self-dealing, concealment, or use of company property for a manager's personal benefit.

38. Paragraph 9 states that the Letter supplements and supersedes conflicting operating-agreement terms. Plaintiffs acknowledge that provision but allege that it did not convert operational management authority into unrestricted power to misappropriate company property, conceal material conflicts, or falsely represent that all approvals necessary for a consent foreclosure judgment existed.

39. On February 24, 2025, counsel for the Markovici / CC side sent a change-of-manager notice to Walker & Dunlop and copied Varadero, Chase, Hayum, Pini Markovits, and counsel. Hayum immediately asked under what authority complete control was being taken and stated that the action contravened the operating agreement absent communication.

40. The same thread shows that the Letter was then circulated and that Hayum agreed to sign a resignation. Plaintiffs therefore do not allege that Markovici had no management rights. The dispute is whether that management transition permitted the specific fraudulent, conflicted, conversion, concealment, surrender, and foreclosure-consent acts challenged in this Complaint.

## <u>FACTUAL ALLEGATIONS</u>

### A. Loan, Cash Management, Account Control, and Company Money

41. On or about December 16, 2021, BE Greenbriar LLC and BE Union LLC entered into a loan transaction in the original principal amount of $14,250,000 in connection with the Properties. The loan was secured by mortgages and assignments of leases and rents.

42. The filed assignment history identifies BP CM Acquisition SPV, LLC as the current holder of the loan. The lender's filed declaration states that the Borrowers defaulted on or about July 9, 2025 by failing to make the required monthly debt-service payment.

43. Plaintiffs possess an executed Cash Management Agreement identifying a lender-controlled deposit-account-control account ending in 3663. The cash-management structure required rents and other property receipts to move through controlled accounts and was central to the lender's collateral protections.

44. During 2025, as operational control shifted to the Markovici / CC side, rent deposits substantially decreased in the DACA account while deposits increased in an operating account ending in 6905. Plaintiffs allege, upon information and belief, that Defendants caused or directed electronic banking instructions, transfers, and account use that moved rents and company funds outside the required or disclosed structure and concealed the true flow of company money.

45. The relevant account instructions, deposits, payments, and transfers were made through interstate electronic banking systems and wires. Use of those systems was intended and reasonably foreseeable because the Defendants were exercising financial control over multi-state companies, Florida Properties, and lender-controlled accounts.

46. Preliminary bank and accounting records identify payments to personal or insider-associated credit-card accounts and individuals, including a payment associated with Markovici and additional insider-associated payments. Plaintiffs allege, upon information and belief, that at least some of those payments lacked a legitimate company purpose or were not properly authorized, documented, or disclosed.

47. Plaintiffs further allege that Markovici directly or indirectly received, transferred, caused to be spent, or exercised control over company money for personal, affiliate, or non-company purposes. All such amounts, whether presently identified or discovered through accounting and subpoenas, are direct damages recoverable by the company that owned the funds.

48. Defendants retained or controlled bank, payroll, accounting, and company records and failed to provide a complete accounting, preventing Plaintiffs from determining the full amount and destination of rents, deposits, reserves, escrow funds, card payments, affiliate payments, management charges, and other company money.

**B. Rate-Cap Dispute and Capital-Call Pressure**

49. In May and June 2025, the parties were addressing an expiring interest-rate cap and the need to extend or replace it. A quotation in the approximate amount of $128,000 was obtained, and the issue became a central point of pressure in the management dispute.

50. On June 25, 2025, Markovici transmitted an email to BE Tampa members seeking a $150,000 capital call to purchase a rate-cap extension. The email stated that proof of an extension was required by July 9, warned that failure could result in default and loss of the members' investment, and referenced a 150% forfeiture consequence for members who did not fund.

51. The capital-call email was sent while Markovici and the CC Group controlled or substantially controlled critical financial information, lender access, and company accounts. Plaintiffs allege that it omitted material facts concerning the Properties' actual cash position, the movement and use of rents, available workout alternatives, and Markovici's conflicting personal objectives.

52. David Kleiner rejected the proposal and stated that Robert Izsak and the Andres and Veronica Izsak Family Trust also rejected it. Other participants demanded access to the same financial and account information available to Markovici and the lender.

53. The lender later declared a payment default as of July 9, 2025. Plaintiffs allege that Defendants' control of cash, accounts, records, and communications materially contributed

to the inability to determine and cure the amount due and to the deterioration of the workout position.

54. The capital-call transmission, together with the concealed account and control facts, furthered the scheme by attempting to obtain additional money and strengthen control over member interests while Defendants withheld information necessary to evaluate the demand.

**C. PNA, Palm Management, and Repeated Rescue Offers**

55. In July 2025, lender-side representatives circulated a Pre-Negotiation Agreement (“PNA”). The email record shows that the lender rejected Markovici’s proposed PNA changes, removed him from that PNA, and accepted a signed PNA from Hayum and Pini Markovits only.

56. The same period included a proposed transition to Palm Property Management. Lender-side representative Adam Elkaim confirmed a framework involving a $400,000 loan paydown associated with releasing Markovici from the guaranty and an additional $400,000 for a one-year interest-rate cap. Palm was conditionally approved, but execution later stalled on redlines from Markovici’s side.

57. Those communications show that lender-side participants knew that there were competing management groups, treated Hayum and Pini Markovits as legitimate workout counterparties, and understood that Markovici’s personal guaranty position was connected to proposed workout terms.

58. On July 30, 2025, a VA social worker assisting Greenbriar residents reported that the former manager said it was no longer associated with the property, that nobody was present in the leasing office to address maintenance issues, and that residents did not know how to make rent payments. Hayum forwarded the report to lender-side participants and warned of serious operational consequences.

59. On or about September 10, 2025, Hayum circulated a further written rescue plan proposing approximately $400,000 of new money for the Properties, payment of all property cash flow to the lender, an approximately eighteen-month extension, relief or deferral concerning default charges, and active refinancing or sale efforts.

60. The September plan also referenced a potential buyer for the forty-unit Willow Square property at approximately $150,000 per unit, subject to diligence and lender approval, and represented that an orderly sale could generate value beyond the debt allocated to that asset.

61. On or about September 29-30, 2025, representatives walked the Properties with the lender and a contractor to identify and price the work needed to return units to service and restore occupancy.

62. During October 2025, the parties exchanged underwriting, valuation, and modification proposals. The lender demanded capital-expenditure funding at different points, including approximately $700,000 and later approximately $475,000. The investor side continued to represent that approximately $400,000 was available or committed for a rescue transaction.

63. Plaintiffs and their representatives also pursued refinancing, including outreach to Lument, and continued discussing replacement management, capital improvements, loan modification, extension tests, and possible property sales.

64. These repeated proposals demonstrate that the Properties were not abandoned and that concrete, time-sensitive alternatives to receivership and foreclosure were presented to protect the lender's collateral and preserve company value.

65. Lender-side participants knew that Markovici's asserted authority was disputed, knew that the Markovici / CC management period was associated with rent confusion, missing

records, declining occupancy, and alleged account irregularities, and knew that another stakeholder group was offering capital and replacement management.

66. Plaintiffs allege that the lender did not deal fairly or in good faith with the rescue proposals and did not provide the investor side a consistent opportunity to complete them. Instead, lender-side participants maintained a separate and more advanced track with Markovici, including documentation concerning surrender and his personal guaranty exposure.

67. Upon information and belief, lender-side participants preferred or continued the Markovici track because it offered the prospect of a substantial guaranty-related payment and a rapid path to surrender, notwithstanding the damage being caused to the Properties and the allegations that rents and company money were being diverted or withheld from the required account structure.

**D. The September 2025 Deed-in-Lieu Mailing**

68. On or about September 3 or 4, 2025, counsel acting for the Markovici side sent a formal Notice of Intent to Deliver Deed-in-Lieu stating that Markovici intended to cause BE Greenbriar LLC and BE Union LLC to surrender the Properties through his asserted capacity as sole manager.

69. The notice was transmitted through the United States mail and interstate electronic communications to lender-side and borrower-side counsel. Markovici and the other Defendants intended, caused, and reasonably foresaw the use of those mail and wire channels because the purpose of the notice was to communicate and implement a formal surrender transaction involving New York actors, a lender, counsel, and Florida real property.

70. The notice represented, expressly or by necessary implication, that Markovici possessed valid and sufficient authority to cause both Property Companies to surrender their principal assets. Plaintiffs allege that the representation was materially false or misleading

because the necessary company approvals had not been obtained and the scope of his authority was already disputed.

71. Lender counsel thereafter asked whether the other borrower-side clients were "in agreement with the proposed transaction." Borrower-side counsel separately asked whether Markovici had requested the required member approval. These communications show actual notice that the claimed sole authority to surrender the Properties was not accepted as unquestioned company authority.

72. Despite that notice, the Markovici track continued and ultimately led to a foreclosure-consent document that again represented that the Property Companies were acting through duly authorized representatives.

**E. The Personal Guaranty Track and Alleged $650,000-$750,000 Release**

73. BP CM commenced a New York action against guarantors including Markovici, Hayum, Pini Markovits, and Aron Goldklang.

74. On or about September 9, 2025, the lender sent a guarantor-liability demand of approximately $1,308,518.01, including amounts connected to the default and a rent-turnover demand.

75. On or about September 16, 2025, the Markovici side transmitted a substantially lower guaranty calculation of approximately $583,550.47, reflecting a dispute over forward debt service and related components.

76. Plaintiffs possess a recording of a conversation in which Markovici stated in substance that the lender wanted approximately $650,000 in exchange for releasing him from the guaranties and that he was prepared to pay.

77. In December 2025, workout adviser Barry Brecher asked lender counsel how an assumed approximately $750,000 payment by Markovici had been applied to the loan. Lender

counsel declined to comment on the assumed amount, stated that application of the funds was for the lender, and stated that resolution with the remaining borrowers or guarantors did not depend on those funds.

78. Markovici was voluntarily discontinued from the New York guaranty action on or about October 28, 2025, while claims against the remaining guarantors continued.

79. Plaintiffs allege, upon information and belief, that Markovici negotiated for and obtained, or sought to obtain, a personal guaranty release or equivalent benefit involving a substantial payment, and that the prospect or receipt of that benefit supplied a motive to use company authority against Plaintiffs' interests. The exact amount, source, recipient, release terms, and application of any later payment are within the possession of Markovici, BP CM, Varadero, their counsel, and financial institutions. The December 2021 Letter separately refers to an original $750,000 capital contribution by Markovici and others participating with him. Plaintiffs do not conflate that original 2021 capital contribution with the later guaranty-release transaction alleged here; discovery is required to determine whether a separate later payment occurred and, if so, its amount, source, recipient, and application.

**F. Receivership, Records, Foreclosure Consent, and Later Reliance**

80. On November 4, 2025, the Florida court appointed Shlomo Tajerstein of TG Realty Management LLC as Receiver. The order gave the Receiver possession and control of the Properties, authority to manage finances, and control over rents and income.

81. A November 2025 communication stated that Markovici had not turned over prior banking records required by a settlement or turnover provision. A March 2026 TG Realty communication requested payroll and workers' compensation records from nonparty CC Group employee David Horowitz and stated that he should have the complete records. Plaintiffs allege

that important company and financial records remained controlled or withheld by Markovici, Frankel, CC Group, or their agents.

82. On February 11, 2026, BP CM amended the Florida complaint to seek foreclosure.

83. On April 30, 2026, Markovici signed or caused to be signed the Foreclosure Consent on behalf of both BE Greenbriar LLC and BE Union LLC. The filed page shows his signature for both companies while leaving the printed Name and Title fields blank and attaching no visible approval instrument.

84. Markovici and the other Enterprise participants caused the Foreclosure Consent to be transmitted by interstate email, electronic document transmission, or other interstate wire to lender-side participants and counsel for use in obtaining a foreclosure judgment. Because the document expressly authorized filing with the court, transmission to counsel and subsequent electronic filing were intended, caused, and at minimum reasonably foreseeable uses of interstate wires in furtherance of the scheme.

85. The Foreclosure Consent represented, expressly or by necessary implication, that Markovici had authority to bind both Property Companies, waive their defenses, accept the debt and fee components, authorize filing, and consent to sale of the Properties. Plaintiffs allege that those authority representations were false or materially misleading because the required approvals had not been obtained, the authority dispute was known, and affected members and investors had not been consulted or notified.

86. Multiple members and investors have stated that they never approved or authorized the Foreclosure Consent, were never asked to approve it, were never given a draft

before filing, were never told that it would be submitted to a court as the basis for a foreclosure judgment, and did not ratify it afterward.

87. On May 4, 2026, the Florida court entered an Amended Consent Final Judgment of Foreclosure in the amount of $16,280,924.44. On June 4, 2026, the court entered the Second Amended Consent Final Judgment, updated the total indebtedness to $16,794,016.42, and reset the sale for June 29, 2026.

88. The June 4 judgment included, among other amounts, $663,020.83 in default interest, $712,500 in late fees, $38,500 in receivership fees, a $350,000 protective advance, and $46,203.90 in attorneys' fees. The judgment stated that the Borrowers' consent to the amounts, including attorneys' fees, eliminated the need for an affidavit of reasonableness.

89. On June 5, 2026, a Notice of Sale was filed based on the Second Amended Judgment. The electronic filing, service, and lender/counsel communications used to implement the Foreclosure Consent were natural, intended, and reasonably foreseeable consequences of the April 30 transmission.

90. On June 8, 2026, involuntary Chapter 11 petitions were filed against BE Greenbriar LLC and BE Union LLC.

91. BP CM later relied on the consent narrative in Bankruptcy Court to argue that the Debtors had voluntarily consented to receivership and foreclosure, lacked equity or an ability to satisfy the mortgage, and should remain under Receiver control.

92. Plaintiffs have not located any document in the filed Consent package showing a BE Tampa member consent satisfying the applicable vote requirement, a written manager vote approving the specific consent judgment, a required Independent Director approval, a Union

authority instrument, or an authority certificate identifying Markovici's capacity to waive defenses and confess judgment.

93. The Foreclosure Consent and resulting judgments materially impaired Plaintiffs' ability to contest disputed charges, complete a rescue or refinance, conduct an orderly sale, restore management, and protect rents and other company property.

94. Plaintiffs seek damages and equitable relief for the independent misconduct alleged herein. Any direct request to vacate or set aside the Florida consent judgments is reserved for the Florida court and the courts supervising the bankruptcy estates.

**THE RICO ENTERPRISE**

95. The association-in-fact enterprise (the "Enterprise") consisted of Markovici, Frankel, Creative Capital Group / CC Group, related agents and entities, and other persons whose identities will be established through discovery. The Enterprise was broader than and distinct from any single Defendant.

96. The Enterprise had a common purpose of obtaining, preserving, and exploiting control over Plaintiffs' rents, bank accounts, records, management decisions, workout and surrender decisions, and disposition rights, and using that control to obtain or protect money, property, personal guaranty relief, and personal or affiliate benefits at Plaintiffs' expense.

97. The Enterprise had continuing relationships among its participants. Markovici asserted decision-making authority, controlled or influenced lender communications, and pursued surrender and personal guaranty relief; Frankel acted as a CC Group principal and management-side participant; CC Group supplied the organizational vehicle and personnel for management, banking, accounting, records, and communications; and the Doe participants carried out additional acts.

98. The Enterprise operated from at least early 2025 through the bank, capital-call, management, deed-in-lieu, guaranty, Foreclosure Consent, records, and bankruptcy-related events described above.

99. The Enterprise's activities affected interstate commerce through the ownership and operation of Florida real property, New York-based management and guaranty activity, interstate lender and banking relationships, and repeated use of interstate mail, email, electronic banking, and court filing systems.

100. Each RICO Defendant conducted or participated, directly or indirectly, in the operation or management of the Enterprise's affairs through the roles alleged above, rather than merely providing unrelated or ordinary services.

101. The Enterprise was used to convert internal management control into control over traditional money and property, including rents, bank funds, company accounts, property value, disposition rights, and the economic benefit of surrender and guaranty transactions.

102. Defendants' retention of records, funds, benefits, and control, together with the continuing use of the disputed authority narrative, created a threat that the same methods would continue unless restrained or remedied through this action and the related proceedings.

**PATTERN OF RACKETEERING ACTIVITY - MAIL AND WIRE FRAUD**

103. Defendants devised and intended to devise a scheme to defraud Plaintiffs and to obtain or control money and property by materially false and misleading representations and omissions concerning corporate authority, required approvals, the use and destination of company funds, company financial condition, personal conflicts, guaranty relief, and surrender or foreclosure authority.

104. For purposes of 18 U.S.C. §§ 1341 and 1343, Defendants caused the use of the mails and wires when they personally transmitted communications or transactions, directed

agents to do so, or acted with knowledge that use of mail, email, interstate banking systems, electronic document transmission, or court filing systems would follow in the ordinary course or was reasonably foreseeable. Each mailing or wire was incident to an essential part of the scheme even where the transmission itself did not contain every false statement or omission.

105. Predicate Act 1 - From approximately January through November 2025, Enterprise participants caused repeated interstate electronic banking instructions, deposits, card payments, and transfers affecting rents and company funds through the DACA account ending in 3663, the operating account ending in 6905, and related accounts. Plaintiffs allege that those wires moved, concealed, spent, or controlled company money while Defendants withheld full account information and records.

106. Predicate Act 2 - On June 25, 2025, Markovici transmitted the BE Tampa capital-call email by interstate wire to members, seeking $150,000 and threatening substantial investment consequences while Defendants controlled material financial and lender information. Plaintiffs allege that the email concealed the true account activity, movement of rents, available alternatives, and Markovici's conflicting objectives and was intended to obtain money and strengthen control over member interests.

107. Predicate Act 3 - On or about September 3 or 4, 2025, Markovici and his agents caused the Notice of Intent to Deliver Deed-in-Lieu to be sent by United States mail and interstate wire to the lender and counsel, representing that Markovici possessed authority to surrender both Properties as sole manager. Plaintiffs allege that the authority representation was false or materially misleading and was intended to cause transfer or disposition of Plaintiffs' real-property interests.

108. Predicate Act 4 - Between July and October 2025, Markovici and other Enterprise participants caused interstate emails and wires concerning his requested guaranty release, proposed paydown, management control, and surrender position. Plaintiffs allege that those communications concealed his personal conflict and were used to obtain or protect a personal release or equivalent benefit while company property and surrender decisions were being controlled.

109. Predicate Act 5 - On or about April 30, 2026, Markovici and other Enterprise participants caused the Foreclosure Consent to be transmitted by interstate email or electronic document transmission to lender-side participants and counsel, representing that both Property Companies validly consented to foreclosure, waiver of defenses, judgment amounts, and court filing. The subsequent electronic filing of that Consent was expressly contemplated by the document and was intended, caused, and reasonably foreseeable.

110. Predicate Act 6 - Between April 30 and June 5, 2026, Defendants caused or reasonably foresaw additional interstate electronic transmissions among Enterprise participants, lender-side participants, and counsel to prepare, transmit, file, serve, and implement the Consent Judgment and Notice of Sale. Those communications converted the challenged authority representation into control over the sale and disposition of Plaintiffs' Properties.

111. The later use of the consent narrative in the New York bankruptcy cases was a further intended and foreseeable use of the same authority representation and demonstrates that the scheme's effects and use extended beyond the initial Florida filing.

112. Defendants knew that Markovici's authority to surrender the Properties had been expressly questioned before the Foreclosure Consent and knew that multiple members had not been asked for or given notice of the consent.

113. The mail and wire acts were related because they involved the same Properties, overlapping participants, company accounts and records, disputed authority, personal guaranty motives, surrender and foreclosure objectives, and the intended acquisition, control, or diversion of Plaintiffs' money and property.

114. The pattern extended from at least early 2025 through June 2026 and involved repeated bank wires, member emails, a formal mailed surrender notice, guaranty-related communications, electronic transmission of the Foreclosure Consent, and its implementation through interstate counsel and court systems.

115. The scheme affected three corporate victims, their two Properties, their rents and accounts, and the economic interests of numerous members, investors, and guarantors. It involved multiple forms of property, multiple transactions, and continuing control over records and benefits.

116. The Enterprise's continued retention of company records, funds, economic benefits, and the products of the disputed authority created an open-ended threat of continued concealment, use, transfer, or exploitation of Plaintiffs' property and rights.

117. The predicate acts directly and foreseeably caused Plaintiffs to lose money, control of accounts and records, business opportunities, and the ability to protect and preserve their Properties, and caused further costs and losses in tracing, accounting, stabilization, and litigation.

**DIRECT INJURY, CAUSATION, AND DAMAGES**

118. Plaintiffs were directly injured in their business and property by reason of the racketeering activity and related misconduct.

119. Plaintiffs' damages include every dollar of rents, tenant payments, deposits, reserves, escrow funds, insurance proceeds, operating funds, and other company money that

Markovici or persons acting with him improperly took, diverted, concealed, transferred, spent, or caused to be applied for a personal, affiliate, or non-company purpose.

120. These damages include funds routed through unauthorized or undisclosed accounts, funds paid to personal or insider-associated credit cards, funds paid to insiders or affiliates without legitimate invoices or company purpose, and funds removed from the cash-management structure without proper authorization or disclosure.

121. If company funds, rents, reserves, collateral proceeds, or company value were used directly or indirectly to obtain Markovici's personal guaranty release, discontinuance, credit, or settlement benefit, Plaintiffs seek recovery, tracing, disgorgement, and a constructive trust over the full value of that benefit.

122. Plaintiffs suffered loss of use of company money, lost interest and investment return, additional borrowing and operating costs, and expenses necessary to trace and recover the funds.

123. Plaintiffs also suffered lost net operating income, occupancy-related losses, incremental repair and stabilization costs, increased management and receivership expenses, and diminution in the value and income-producing ability of the Properties caused by the management and financial misconduct alleged herein.

124. Plaintiffs lost or were deprived of a fair opportunity to complete concrete rescue, replacement-management, modification, refinancing, or sale transactions, including the Palm proposal, the September rescue plan, the capital proposals, the Lument refinancing outreach, and potential property sales.

125. Plaintiffs further suffered incremental default interest, late fees, protective advances, attorneys' fees, and other charges to the extent those amounts were caused or increased by the predicate acts and related misconduct rather than by the preexisting loan alone.

126. Plaintiffs incurred and will continue to incur reasonable accounting, forensic, tracing, document-recovery, management-restoration, and investigative expenses necessary to identify and recover their property.

127. The $14,250,000 principal loan predated the alleged misconduct and is not itself alleged as RICO damage. Plaintiffs seek only the direct and incremental business and property losses proximately caused by the unlawful scheme and predicate acts.

128. The precise amount of damages will be established through bank and card records, general ledgers, account statements, rent rolls, receiver records, property records, valuation evidence, guaranty and release records, subpoenas, and expert testimony.

## CLAIMS FOR RELIEF

## COUNT I - CIVIL RICO, 18 U.S.C. § 1962(c)

129. Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

130. Each RICO Defendant is a "person" within the meaning of 18 U.S.C. § 1961(3).

131. The Enterprise is an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4), separate from any single Defendant, with a common property-directed purpose, relationships among its participants, and sufficient longevity to pursue that purpose.

132. Each RICO Defendant conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through management control, financial and records control, communications, banking activity, guaranty-related activity, surrender and foreclosure activity, and related conduct described above.

133. Defendants conducted the Enterprise's affairs through a pattern of racketeering activity consisting of repeated acts indictable under 18 U.S.C. §§ 1341 and 1343, including the mail and wire acts described above.

134. The racketeering acts were related, had the same or similar purposes, participants, victims, methods, and property objectives, and constituted or threatened continued racketeering activity.

135. Plaintiffs were directly injured in their business and property by reason of Defendants' violation of 18 U.S.C. § 1962(c).

136. Plaintiffs are entitled to the remedies provided by 18 U.S.C. § 1964(c), including treble damages, costs, and reasonable attorneys' fees.

**COUNT II - RICO CONSPIRACY, 18 U.S.C. § 1962(d)**

137. Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

138. Defendants knowingly agreed that members of the Enterprise would conduct its affairs through a pattern of racketeering activity directed at Plaintiffs' money and property.

139. The agreement is evidenced by coordinated management and banking activity, control and withholding of records, related communications, the use of claimed authority to pursue surrender, personal guaranty and release negotiations, and the preparation, transmission, and implementation of the Foreclosure Consent.

140. At least one conspirator committed overt acts and predicate acts in furtherance of the conspiracy, including the mail and wire acts described above.

141. Plaintiffs suffered direct business and property injury proximately caused by acts taken pursuant to the RICO conspiracy.

**COUNT III - BREACH OF BE TAMPA OPERATING AGREEMENT AGAINST MARKOVICI**

142. Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

143. The BE Tampa operating agreement and valid amendments are binding agreements governing management authority, member consent, company-purpose restrictions, records, extraordinary actions, and other duties.

144. Markovici breached those provisions by acting beyond the scope of granted authority, acting without approvals required for extraordinary transactions, using or permitting use of company money or assets for non-company or conflicted purposes, failing to provide required records, and causing company rights to be waived or surrendered without required authorization.

145. BE Tampa and the other Plaintiffs suffered damages as a direct and proximate result of those breaches.

**COUNT IV - BREACH OF FIDUCIARY AND MANAGERIAL DUTIES AGAINST MARKOVICI**

146. Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

147. Markovici owed fiduciary, managerial, contractual, and common-law duties to act within granted authority, comply with approval requirements, preserve company property, disclose material conflicts, provide records, avoid self-dealing, and act for proper company purposes.

148. The December 2021 Letter expressly preserved fiduciary duties available under New York law and conditioned liability protections on compliance with applicable standards. It did not authorize fraud, bad faith, willful misconduct, conversion, concealment, or personal use of company property.

149. Markovici breached those duties through the unauthorized or conflicted surrender and foreclosure-consent activity, concealment or withholding of records, misuse or misapplication of company funds, materially misleading financial and authority representations, and conduct undertaken to obtain a personal guaranty benefit adverse to Plaintiffs.

150. Plaintiffs suffered direct damages as a result.

**COUNT V - AIDING AND ABETTING BREACH OF DUTY AGAINST FRANKEL, CC GROUP, AND DOES**

151. Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

152. Markovici and other primary actors committed underlying breaches of managerial, fiduciary, contractual, and common-law duties owed to Plaintiffs.

153. Frankel, CC Group, and the Doe Defendants had actual knowledge of the challenged conduct and substantially assisted it through management communications, bank or record control, document transmission, concealment, accounting, implementation of disputed decisions, or other acts alleged herein.

154. The aiding Defendants' assistance was a substantial factor in causing diversion or concealment of company property, loss of records and control, implementation of the surrender and Foreclosure Consent, and resulting business injury.

155. Plaintiffs suffered damages proximately caused by that substantial assistance.

**COUNT VI - FRAUD AND FRAUDULENT CONCEALMENT**

156. Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

157. Defendants made material misrepresentations and concealed material facts concerning the scope of company authority, required approvals, the use and destination of rents and company funds, financial reporting, company records, surrender authority, and personal-benefit transactions.

158. Among other things, Defendants represented or caused others to understand that Markovici possessed sufficient authority to surrender the Properties and consent to foreclosure on behalf of both Property Companies, while concealing the absence of actual member approval, the known authority dispute, the lack of notice to members, and Markovici's personal guaranty conflict.

159. Defendants also concealed the complete movement and use of company money and records, including funds routed through operating accounts, payments to personal or insider-associated recipients, and any use of company property in connection with a personal guaranty release.

160. Defendants knew the material representations and omissions were false or misleading, intended that Plaintiffs, members, the lender, counsel, courts, and other participants act upon them, and used interstate communications and the mails to advance the transactions.

161. Plaintiffs suffered direct and proximate damages as a result of the fraud and concealment.

**COUNT VII - CIVIL CONSPIRACY**

162. Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

163. Defendants agreed to accomplish unlawful objectives, or lawful objectives by unlawful means, including the use of disputed authority, concealment, fraudulent communications, and control of company money and records to affect Plaintiffs' property, guaranty, and surrender rights.

164. Defendants committed overt acts in furtherance of the agreement, including the communications, mailings, wires, transfers, records concealment, and consent-related acts alleged above.

165. Plaintiffs suffered damages proximately caused by the conspiracy.

**COUNT VIII - CONVERSION AND MISAPPROPRIATION OF COMPANY FUNDS**

166. Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

167. Plaintiffs owned and had the immediate right to possess their rents, deposits, reserves, escrow funds, operating funds, insurance proceeds, account balances, and other identifiable company money and property.

168. Markovici, CC Group, and one or more Doe Defendants exercised unauthorized dominion and control over identifiable company funds by diverting, transferring, spending, concealing, withholding, or applying them for personal, affiliate, or non-company purposes inconsistent with Plaintiffs' rights.

169. The converted or misappropriated property includes all funds paid to personal or insider-associated accounts, all unauthorized affiliate payments, all unaccounted rents and deposits, and any company money or value used to obtain a personal guaranty release or other personal benefit.

170. Plaintiffs demanded or were entitled to the return, disclosure, and accounting of their property, but the property and complete records were not returned or provided.

171. Plaintiffs suffered damages in the full amount of the converted property, lost use, interest, consequential losses, and tracing and recovery costs.

**COUNT IX - ACCOUNTING AND EQUITABLE TRACING**

172. Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

173. Defendants or related custodians possessed or controlled bank statements, cash-management records, rent rolls, general ledgers, payroll records, card records, reserves, escrow records, management records, guaranty records, and other information necessary to determine the disposition of Plaintiffs' money and property.

174. The accounts are complex, the records span multiple managers and custodians, and Plaintiffs cannot determine the full amount and location of their property without a complete accounting and tracing.

175. Plaintiffs seek a complete accounting of all rents, deposits, DACA and operating accounts, reserves, escrow funds, receiver funds, lender advances, protective advances, management expenses, repairs, vendor payments, card payments, insider or affiliate payments, guaranty-related funds, and all other disbursements affecting the Properties.

**COUNT X - UNJUST ENRICHMENT / CONSTRUCTIVE TRUST (ALTERNATIVE)**

176. Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein and plead this Count in the alternative to the extent no enforceable contract governs the particular benefit.

177. Defendants received or retained money, property, value, release benefits, fees, credits, or other benefits that in equity and good conscience belong to Plaintiffs or were obtained through the use of Plaintiffs' property and authority.

178. It would be unjust to permit Defendants to retain benefits obtained through unauthorized conduct, misuse or conversion of company property, concealment, or transactions adverse to Plaintiffs.

179. Plaintiffs seek restitution, disgorgement, tracing, and a constructive trust over specifically identifiable funds, property, credits, release benefits, or other benefits to the extent legally available.

## X. PRAYER FOR RELIEF

- Award compensatory damages in an amount to be proven at trial for Plaintiffs' direct business and property injuries, including all improperly taken, diverted, converted, concealed, or misapplied company money;
- Award treble damages, costs, and reasonable attorneys' fees under 18 U.S.C. § 1964(c);

- Order a complete accounting and equitable tracing of rents, bank accounts, reserves, escrows, receiver funds, lender advances, expenses, repairs, fees, card payments, insider or affiliate transfers, guaranty-related funds, and all other disbursements;
- Order restitution, disgorgement, or a constructive trust over specifically identifiable wrongfully retained funds, property, credits, release benefits, or other benefits;
- Award prejudgment and post-judgment interest as permitted by law;
- Award costs and any contractual or statutory attorneys' fees available on the state-law claims;
- Sever or stay, rather than dismiss, any individual state-law claim found to be subject to arbitration while retaining jurisdiction over claims not subject to arbitration; and
- Grant leave to amend under Federal Rule of Civil Procedure 15 if discovery identifies additional participants, including lender-side participants, or supplies further particularized facts concerning the consent, payment, account, and authority transactions;
- Grant such other and further relief as the Court deems just and proper, without requiring this Court to vacate or reverse the Florida foreclosure judgment.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all claims so triable.

Dated: Chester, New York
September 6, 2026

Respectfully submitted,

**THE LAW OFFICE OF CHRISTIAN N. MARTINEZ, PLLC**

By: /s/ Christian N. Martinez
Christian N. Martinez, Esq.
*Attorneys for Plaintiffs*
PO Box 3
Chester, New York 10918
(845) 544-9189
Christian@cmartinez-law.com

# EXHIBIT F

**ECF No. 32-2 - Receiver Income Statement and Rent Roll**

**EXHIBIT B**

**Income Statement and Rent Roll**

# Income Statement

**Exported On:** 09/04/2026 01:05 PM

**TG Realty Management LLC**
**Property Groups:** Boone Equity
**As of:** Jul 2026
**Accounting Basis:** Accrual
**Level of Detail:** Detail View
**Include Zero Balance GL Accounts:** No

| Account Name | Selected Month |
|---|---|
| **Operating Income & Expense** | |
| **Income** | |
| Security Deposit Keep Income | 0.00 |
| **Income** | |
| Rent Income | 46,544.45 |
| Rental Assistance | 6,543.00 |
| **Total Income** | **53,087.45** |
| Concessions - Move in | -4,002.00 |
| Concessions - Res Relations | -600.00 |
| Early Termination Fee | 0.00 |
| Transfer fee | 0.00 |
| Late Fees | 300.00 |
| Water-Sewer Usage Charges | 3,091.00 |
| Pest Control Service | 401.00 |
| Trash Service | 404.00 |
| Renters Insurance | 60.00 |
| Administrative Fee | 4,546.00 |
| Resident Damage Reimbursement | 0.00 |
| Miscellanous Income | -150.00 |
| Concessions | 0.00 |
| **Fees** | |
| Application Fee | 135.00 |
| Insurance Services | 543.50 |
| **Total Fees** | **678.50** |
| Miscellaneous Income | -50.00 |
| **Total Operating Income** | **57,765.95** |
| **Expense** | |
| **Administrative Expenses** | |
| Licenses and Fees | 0.00 |
| Advertising | 3,474.00 |
| Office Expense | 0.00 |
| Computer & Software | 0.00 |
| Bank Fees | 0.00 |
| Advertising & Marketing | 0.00 |
| **Total Administrative Expenses** | **3,474.00** |
| **Payroll** | |
| Salaries & Wages | 12,665.55 |
| Employer Payroll Taxes | 968.91 |
| Payroll Processing | 447.00 |
| **Total Payroll** | **14,081.46** |
| **Repairs & Maintenance** | |
| Carpet Cleaning | 0.00 |
| Landscaping Maintenance | 0.00 |
| Maintenance Parts & Supplies | 1,164.74 |
| Plumbing | 0.00 |

| | |
|---|---|
| **Total Repairs & Maintenance** | **1,164.74** |
| Legal | 589.40 |
| Repair & Maintenance | 0.00 |
| Termite Bonds | 18,800.00 |
| Pool Maint and Supplies | 0.00 |
| Cleaning - Units | 360.00 |
| Exterior Buildings | 0.00 |
| Landscaping - Mthly Contract | 0.00 |
| Exterminators - Contract | 244.00 |
| Pool Maintenance - Contract | 2,511.80 |
| Temp Contract Labor | 0.00 |
| Bank Charges | 10,000.00 |
| Security Patrols | 10,983.50 |
| Advertising | 0.00 |
| **Insurance** | |
| General Liability | 3,064.01 |
| Worker Comp Insurance | 0.00 |
| **Total Insurance** | **3,064.01** |
| **Legal and Professional Fees** | |
| Management Fee | 4,500.00 |
| Accounting | 1,200.00 |
| **Total Legal and Professional Fees** | **5,700.00** |
| **Utilities** | |
| Water & Sewer | 12,137.50 |
| Telephone & Internet | 47.71 |
| Electricity | 1,685.93 |
| Trash Removal | 1,575.00 |
| Electric- Vacant Units | 3,650.96 |
| Office Internet & Phone | 165.38 |
| Water | 0.00 |
| **Total Utilities** | **19,262.48** |
| **Other** | |
| Security Service | 45,077.74 |
| **Total Other** | **45,077.74** |
| **CAPITAL EXPENSES** | |
| Appliances | 0.00 |
| **Total CAPITAL EXPENSES** | **0.00** |
| **Total Operating Expense** | **135,313.13** |
| **NOI - Net Operating Income** | **-77,547.18** |
| **Other Income & Expense** | |
| **Other Income** | |
| Be Union Bank Funding | 11,941.60 |
| Admin Fee (Chk) | 2.00 |
| **Total Other Income** | **11,943.60** |
| **Other Expense** | |
| Carpet & Vinyl | 0.00 |
| Pool | 0.00 |
| Interior Improvements | 7,450.00 |
| Signs | 0.00 |
| Electrical | 0.00 |
| Plumbing | 297.49 |
| Bathroom Refinishing | 0.00 |
| Exterior Repairs | 0.00 |
| Security Cameras. | 0.00 |
| **Total Other Expense** | **7,747.49** |

| | |
|---|---|
| **Net Other Income** | **4,196.11** |
| Total Income | 69,709.55 |
| Total Expense | 143,060.62 |
| **Net Income** | **-73,351.07** |

## Rent Roll

**Exported On:** 09/04/2026 01:13 PM

**Property Groups:** Boone Equity
**Units:** Active
**As of:** 08/01/2026
**Include Non-Revenue Units:** No
**Include Advertised Rent:** Yes

| Unit | Tags | BD/BA | Tenant | Status | Sqft | Market Rent | Rent | Deposit | Lease From | Lease To | Move-in | Move-out |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **BE GREENBRIAR - 13214 Bunn Cir Tampa, FL 33612** | | | | | | | | | | | | |
| G01 | G01 | 2/1.00 | | Vacant-Unrented | 900 | | | 0.00 | | | | |
| G02 | G02 | 2/1.00 | [redacted] | Current | 900 | | 1,265.00 | 750.00 | 02/09/2026 | 02/08/2027 | 02/09/2026 | |
| G03 | G03 | 1/1.00 | [redacted] | Evict | 615 | | 1,250.00 | 1,000.00 | 08/01/2025 | 07/31/2026 | 08/01/2023 | |
| G04 | G04 | 2/1.00 | [redacted] | Current | 900 | 1,600.00 | 1,600.00 | 750.00 | 06/02/2026 | 06/01/2027 | 06/02/2026 | |
| G05 | G05 | 1/1.00 | [redacted] | Current | 615 | 1,400.00 | 1,100.00 | 0.00 | 07/08/2026 | 07/07/2027 | 07/08/2026 | |
| G06 | G06 | 1/1.00 | [redacted] | Current | 615 | | 1,300.00 | 500.00 | 07/01/2025 | 07/01/2027 | 07/01/2025 | |
| G07 | G07 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G08 | G08 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G09 | G09 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G10 | G10 | 1/1.00 | | Vacant-Unrented | 615 | 1,400.00 | | 0.00 | | | | |
| G11 | G11 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G12 | G12 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G13 | G13 | 2/1.00 | [redacted] | Current | 900 | | 1,265.00 | 750.00 | 03/06/2026 | 03/05/2027 | 03/06/2026 | |
| G14 | G14 | 2/1.00 | | Vacant-Rented | 900 | 1,600.00 | | 0.00 | | | | |
| G15 | G15 | 2/1.00 | [redacted] | Current | 900 | | 1,450.00 | 0.00 | 06/01/2026 | 05/31/2027 | 06/01/2026 | |
| G16 | G16 | 2/1.00 | [redacted] | Current | 900 | | 1,425.00 | 0.00 | 03/16/2026 | 03/15/2027 | 03/16/2026 | |
| G17 | G17 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G18 | G18 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G19 | G19 | 1/1.00 | [redacted] | Current | 615 | | 1,289.00 | 500.00 | 04/01/2025 | 03/31/2027 | 04/01/2025 | |
| G20 | G20 | 1/1.00 | [redacted] | Current | 615 | | 1,311.45 | 1,199.00 | 09/01/2025 | 08/31/2027 | 09/01/2021 | |
| G21 | G21 | 1/1.00 | [redacted] | Current | 615 | 1,400.00 | 1,200.00 | 0.00 | 07/10/2026 | 07/09/2027 | 07/10/2026 | |
| G22 | G22 | 1/1.00 | [redacted] | Current | 615 | | 1,300.00 | 500.00 | 06/01/2025 | 03/02/2027 | 06/01/2025 | |
| G23 | G23 | 1/1.00 | [redacted] | Current | 615 | | 1,300.00 | 2,500.00 | 03/20/2023 | 12/31/2025 | 03/20/2023 | |
| G24 | G24 | 1/1.00 | [redacted] | Current | 615 | | 1,095.00 | 500.00 | 05/30/2025 | 05/31/2027 | 05/30/2025 | |
| G25 | G25 | 1/1.00 | [redacted] | Current | 615 | | 1,095.00 | 0.00 | 07/01/2025 | 06/30/2026 | 07/01/2025 | |
| G26 | G26 | 1/1.00 | | Vacant-Rented | 615 | 1,400.00 | | 0.00 | | | | |
| G27 | G27 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G28 | G28 | 1/1.00 | | Vacant-Unrented | 615 | 1,400.00 | | 0.00 | | | | |
| G29 | G29 | 1/1.00 | | Vacant-Rented | 615 | 1,400.00 | | 0.00 | | | | |
| G30 | G30 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G31 | G31 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G32 | G32 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G33 | G33 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G34 | G34 | 1/1.00 | | Vacant-Unrented | 615 | 1,400.00 | | 0.00 | | | | |
| G35 | G35 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G36 | G36 | 1/1.00 | [redacted] | Current | 615 | | 1,100.00 | 0.00 | 07/03/2026 | 07/02/2027 | 07/03/2026 | |
| G37 | G37 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G38 | G38 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G39 | G39 | 1/1.00 | | Vacant-Unrented | 615 | 1,400.00 | | 0.00 | | | | |
| G40 | G40 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G41 | G41 | 2/1.00 | [redacted] | Current | 900 | | 1,410.00 | 485.00 | 08/01/2019 | | 08/01/2019 | |
| G42 | G42 | 2/1.00 | [redacted] | Current | 900 | | 1,525.00 | 1,000.00 | 05/01/2025 | 04/30/2027 | 04/25/2022 | |
| G43 | G43 | 2/1.00 | | Vacant-Rented | 900 | | | 0.00 | | | | |
| G44 | G44 | 2/1.00 | [redacted] | Current | 900 | | 1,425.00 | 1,020.00 | 11/01/2025 | 10/31/2026 | 02/12/2021 | |
| G45 | G45 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G46 | G46 | 1/1.00 | [redacted] | Current | 615 | | 1,300.00 | 500.00 | 07/01/2025 | 03/31/2027 | 11/22/2023 | |
| G47 | G47 | 1/1.00 | | Vacant-Unrented | 615 | 1,400.00 | | 0.00 | | | | |
| G48 | G48 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G49 | G49 | 1/1.00 | | Vacant-Unrented | 615 | 1,400.00 | | 0.00 | | | | |
| G50 | G50 | 1/1.00 | | Vacant-Unrented | 615 | 1,400.00 | | 0.00 | | | | |
| G51 | G51 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G52 | G52 | 1/1.00 | | Vacant-Unrented | 615 | 1,400.00 | | 0.00 | | | | |
| G53 | G53 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G54 | G54 | 2/1.00 | | Vacant-Rented | 900 | 1,600.00 | | 0.00 | | | | |
| G55 | G55 | 2/1.00 | [redacted] | Current | 900 | 1,600.00 | 1,300.00 | 0.00 | 07/01/2026 | 06/30/2027 | 07/01/2026 | |
| G56 | G56 | 2/1.00 | [redacted] | Current | 900 | | 1,475.00 | 899.00 | 08/01/2019 | 11/30/2025 | 08/01/2019 | |
| G57 | G57 | 1/1.00 | [redacted] | Current | 615 | | 1,301.00 | 2,258.00 | 11/25/2024 | 03/01/2027 | 11/25/2024 | |
| G58 | G58 | 1/1.00 | [redacted] | Evict | 615 | | 1,129.00 | 0.00 | 12/11/2024 | 03/01/2027 | 12/11/2024 | |
| G59 | G59 | 1/1.00 | | Vacant-Unrented | 615 | 1,400.00 | | 0.00 | | | | |
| G60 | G60 | 1/1.00 | [redacted] | Current | 615 | | 1,095.00 | 500.00 | 06/25/2025 | 06/30/2027 | 06/02/2025 | |
| G61 | G61 | 1/1.00 | [redacted] | Current | 615 | 1,400.00 | 1,200.00 | 0.00 | 07/17/2026 | 07/16/2027 | 07/17/2026 | |
| G62 | G62 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G63 | G63 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G64 | G64 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G65 | G65 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G66 | G66 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G67 | G67 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| G68 | G68 | 1/1.00 | [redacted] | Current | 615 | | 1,205.00 | 0.00 | 09/01/2025 | 08/31/2026 | 09/01/2025 | |
| G69 | G69 | 1/1.00 | [redacted] | Current | 615 | | 1,129.00 | 1,129.00 | 02/12/2024 | 03/03/2027 | 02/12/2024 | |
| G70 | G70 | 1/1.00 | [redacted] | Current | 615 | | 1,446.00 | 700.00 | 07/29/2022 | 02/28/2027 | 07/29/2022 | |
| G71 | G71 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G72 | G72 | 1/1.00 | [redacted] | Current | 615 | | 1,412.00 | 1,650.00 | 12/09/2020 | 03/02/2027 | 12/09/2020 | |
| G73 | G73 | 1/1.00 | [redacted] | Notice-Unrented | 615 | | 1,200.00 | 1,000.00 | 03/02/2026 | 09/30/2027 | 03/02/2026 | 09/11/2026 |
| G74 | G74 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G75 | G75 | 1/1.00 | [redacted] | Current | 615 | | 1,179.00 | 150.50 | 06/01/2025 | 05/31/2027 | 06/01/2025 | |
| G76 | G76 | 1/1.00 | [redacted] | Current | 615 | | 1,178.00 | 1,300.00 | 06/01/2025 | 05/31/2027 | 06/01/2025 | |
| G77 | G77 | 1/1.00 | [redacted] | Current | 615 | | 1,249.00 | 500.00 | 09/22/2023 | 02/28/2027 | 09/22/2023 | |
| G78 | G78 | 1/1.00 | | Vacant-Unrented | 615 | 1,400.00 | | 0.00 | | | | |
| G79 | G79 | 1/1.00 | | Vacant-Unrented | 615 | | | 0.00 | | | | |
| G80 | G80 | 1/1.00 | [redacted] | Current | 615 | 1,400.00 | 1,400.00 | 750.00 | 05/28/2026 | 05/27/2027 | 05/28/2026 | |
| **80 Units** | | | | **43.8% Occupied** | **53,190** | **28,800.00** | **44,903.45** | **22,790.50** | | | | |
| **BE UNION LLC- Willow - 2301 E Sligh Ave Tampa, FL 33610** | | | | | | | | | | | | |
| U01 | | 2/2.00 | | Vacant-Unrented | 872 | 1,525.00 | | 0.00 | | | | |
| U02 | | 2/2.00 | [redacted] | Current | 872 | 1,525.00 | 1,525.00 | 1,050.00 | 01/01/2025 | 12/31/2025 | 01/01/2025 | |
| U03 | | 2/2.00 | | Vacant-Unrented | 872 | 1,525.00 | | 0.00 | | | | |
| U04 | | 2/2.00 | | Vacant-Rented | 872 | 1,675.00 | | 0.00 | | | | |
| U05 | | 2/2.00 | [redacted] | Current | 872 | 1,525.00 | 1,525.00 | 0.00 | 05/04/2026 | 04/30/2027 | 05/04/2026 | |
| U06 | | 2/2.00 | | Vacant-Unrented | 872 | 1,525.00 | | 0.00 | | | | |
| U07 | | 2/2.00 | | Vacant-Unrented | 872 | 1,525.00 | | 0.00 | | | | |
| U08 | | 2/2.00 | [redacted] | Current | 872 | 1,525.00 | 1,500.00 | 1,050.00 | 11/01/2025 | 10/31/2026 | 11/01/2025 | |
| U09 | | 2/2.00 | | Vacant-Unrented | 872 | 1,525.00 | | 0.00 | | | | |
| U10 | | 2/2.00 | | Vacant-Rented | 872 | 1,675.00 | | 0.00 | | | | |
| U11 | | 2/2.00 | | Vacant-Unrented | 872 | 1,525.00 | | 0.00 | | | | |
| U12 | | 2/2.00 | | Vacant-Rented | 872 | 1,525.00 | | 0.00 | | | | |
| U13 | | 2/2.00 | | Vacant-Unrented | 872 | 1,675.00 | | 0.00 | | | | |
| U14 | | 2/2.00 | | Vacant-Unrented | 872 | 1,675.00 | | 0.00 | | | | |
| U15 | | 2/2.00 | [redacted] | Current | 872 | 1,675.00 | 1,475.00 | 0.00 | 08/01/2026 | 07/31/2027 | 08/01/2026 | |
| U16 | | 2/2.00 | | Vacant-Unrented | 872 | 1,675.00 | | 0.00 | | | | |
| U17 | | 2/2.00 | | Vacant-Unrented | 872 | 1,525.00 | | 0.00 | | | | |
| U18 | | 2/2.00 | | Vacant-Unrented | 872 | 1,525.00 | | 0.00 | | | | |
| U19 | | 2/2.00 | | Vacant-Unrented | 872 | 1,525.00 | | 0.00 | | | | |
| U20 | | 2/2.00 | | Vacant-Unrented | 872 | 1,525.00 | | 0.00 | | | | |
| U21 | | 2/2.00 | [redacted] | Current | 872 | 1,525.00 | 1,325.00 | 0.00 | 07/13/2026 | 07/12/2027 | 07/13/2026 | |
| U22 | | 2/2.00 | | Vacant-Unrented | 872 | 1,525.00 | | 0.00 | | | | |
| U23 | | 2/2.00 | | Vacant-Unrented | 872 | 1,675.00 | | 0.00 | | | | |
| U24 | | 2/2.00 | | Vacant-Rented | 872 | 1,675.00 | | 0.00 | | | | |
| U25 | | 2/2.00 | | Vacant-Rented | 872 | 1,675.00 | | 0.00 | | | | |
| U26 | | 2/2.00 | | Vacant-Rented | 872 | 1,675.00 | | 0.00 | | | | |
| U27 | | 2/2.00 | [redacted] | Evict | 872 | 1,525.00 | 1,265.00 | 750.00 | 03/02/2026 | 03/01/2027 | 03/02/2026 | |
| U28 | | 2/2.00 | [redacted] | Current | 872 | 1,525.00 | 1,400.00 | 0.00 | 06/01/2025 | 05/31/2027 | 06/01/2025 | |
| U29 | | 2/2.00 | | Vacant-Unrented | 872 | 1,525.00 | | 0.00 | | | | |
| U30 | | 2/2.00 | | Vacant-Unrented | 872 | 1,525.00 | | 0.00 | | | | |
| U31 | | 2/2.00 | [redacted] | Current | 872 | 1,525.00 | 1,325.00 | -390.50 | 07/15/2026 | 01/14/2027 | 07/15/2026 | |
| U32 | | 2/2.00 | | Vacant-Rented | 872 | 1,525.00 | | 0.00 | | | | |
| U33 | | 2/2.00 | | Vacant-Unrented | 872 | 1,525.00 | | 0.00 | | | | |
| U34 | | 2/2.00 | | Vacant-Unrented | 872 | 1,525.00 | | 0.00 | | | | |
| U35 | | 2/2.00 | | Vacant-Unrented | 872 | 1,525.00 | | 0.00 | | | | |
| U36 | | 2/2.00 | | Vacant-Unrented | 872 | 1,525.00 | | 0.00 | | | | |
| U37 | | 2/2.00 | | Vacant-Unrented | 872 | 1,525.00 | | 0.00 | | | | |
| U38 | | 2/2.00 | | Vacant-Unrented | 872 | 1,525.00 | | 0.00 | | | | |
| U39 | | 2/2.00 | | Vacant-Unrented | 872 | 1,525.00 | | 0.00 | | | | |
| U40 | | 2/2.00 | | Vacant-Unrented | 872 | 1,525.00 | | 0.00 | | | | |
| **40 Units** | | | | **20.0% Occupied** | **34,880** | **62,500.00** | **11,340.00** | **2,459.50** | | | | |
| **Total 120 Units** | | | | **35.8% Occupied** | **88,070** | **91,300.00** | **56,243.45** | **25,250.00** | | | | |

# EXHIBIT G

**ECF No. 33 - Adjournment / Reporting Request**

# THE LAW OFFICE OF CHRISTIAN N. MARTINEZ, PLLC

PO Box 3,
Chester, New York 10918

TELEPHONE (845) 544-9189
Email: Christian@cmartinez-law.com

September 9, 2026

**<u>VIA ECF AND EMAIL</u>**

Hon. Jil Mazer-Marino
Chief United States Bankruptcy Judge
United States Bankruptcy Court, Eastern District of New York
Conrad B. Duberstein U.S. Courthouse
271-C Cadman Plaza East
Brooklyn, New York 11201

Re: **In re BE Greenbriar LLC**
**Case No. 1-26-42859-jmm**
**Request to Adjourn September 9, 2026 Hearing**

Dear Chief Judge Mazer-Marino:

I represent Debtor BE Greenbriar LLC.

I respectfully request a one-week adjournment of the hearing presently scheduled for September 9, 2026 at 10:30 a.m. on the motion of BP CM Acquisition SPV, LLC under 11 U.S.C. § 543(d).

I am required to appear for a previously scheduled trial in Sullivan County Supreme Court on September 9, 2026 and therefore cannot meaningfully appear for both matters. The Debtor respectfully requests that the hearing be adjourned to September 30, 2026, at 10 a.m. or to the first date thereafter convenient to the Court.

The Court's existing interim relief permitting the Receiver to remain in possession runs only through September 11, 2026. Because the requested adjournment would carry the hearing past that date, the Debtor respectfully requests that the interim Receiver arrangement continue in place through the adjourned hearing date, solely to preserve the status quo and without prejudice to any party's rights or arguments. This ensures that the property remains under Receiver control, with no gap in authority, during the brief adjournment.

The Debtor also requests that the Court preserve and strengthen the reporting requirement that BP CM has itself proposed. BP CM's proposed final order already provides that the Receiver must furnish the bank and financial statements necessary for BE Greenbriar LLC to prepare its monthly operating reports. The Debtor asks only that the Court preserve that requirement and make it workable by adding a firm monthly deadline and by requiring reporting specific to BE Greenbriar LLC. Because the Receiver presently controls the property's operating accounts, rents, financial records, and property-level information, the Debtor cannot prepare accurate monthly operating reports without timely information from the Receiver.

Accordingly, the Debtor respectfully requests that the Court direct the Receiver, on or before the tenth day of each month, to provide the Debtor and the Office of the United States Trustee with

- all relevant bank and financial account statements;
- rent rolls and occupancy reports;
- receipts and collections;
- disbursements and expenses;
- accounts payable and accounts receivable;
- profit-and-loss statements;
- balance sheets; and
- all other financial information reasonably necessary to prepare the Debtor's monthly operating reports.

The Debtor further requests that BE Greenbriar LLC's financial information be separately identified and reported from that of BE Union LLC, so that the Debtor can accurately comply with the reporting obligations for its separate bankruptcy estate.

This request is made in good faith, is limited to approximately one week, and will not prejudice BP CM because the Receiver will remain in possession and continue preserving and operating the property during the brief adjournment.

Thank you for the Court's consideration.

Respectfully submitted,

*Christian Martinez*
Christian N. Martinez, Esq.
Counsel for BE Greenbriar LLC

cc: Joseph Lubertazzi, Jr., Esq.
Office of the United States Trustee
David Neiman

REQUESTS FOR ADJOURNMENT

Hon. Jil Mazer-Marino

| | |
|---|---|
| Case No. or Adv. Pro. No. | 1-26-42859-jmm |
| Case Name or Adv. Pro. Caption | In re BE Greenbriar LLC |
| Name of Motion to be adjourned | 11 U.S.C. § 543(d). |
| ECF No. for Motion to be adjourned | 6 & 7 |
| Current Hearing Date | September 9, 2026 |
| Adjourned Date Requested | September 30, 2026 |
| Is adjournment on Consent of all parties? | |
| This request for an adjournment **is on consent** of all parties. The attorney or unrepresented party requesting this adjournment certifies that all parties with an interest in the matter to be adjourned have either (i) consented, in writing, to the adjournment; or (ii) have not responded to my written request for an adjournment and two business days have elapsed since the request was received by that party. | X |
| I **do not have consent** for this request for an adjournment from all parties. The parties that do not consent to the adjournment are: | BP CM Acquisition SPV, LLC<br>David Neiman |

# EXHIBIT H

**ECF No. 29 - Order Scheduling Initial Case Management Conference**

United States Bankruptcy Court
Eastern District of New York

In re:
BE GREENBRIAR LLC
Debtor

Case No. 26-42859-jmm
Chapter 11

# CERTIFICATE OF NOTICE

District/off: 0207-1 User: admin Page 1 of 2
Date Rcvd: Sep 02, 2026 Form ID: pdfall Total Noticed: 5

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Sep 04, 2026:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | BE GREENBRIAR LLC, 50 Union Avenue, Suite 505, Irvington, NJ 07111-5221 |
| aty | + | Christian N. Martinez, The Law Office of Christian N. Martinez, PO Box 3, Chester, NY 10918-0003 |
| ptcrd | + | David Neiman, 1620 Vauxhall Rd Suite 308, Union, NJ 07083-3409 |
| 10732990 | + | Christian N. Martinez, Esq., PO Box 3, Chester, NY 10918-0003 |

TOTAL: 4

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| 10719861 | + | Email/Text: Bankruptcy@mccarter.com | Sep 02 2026 18:21:00 | McCARTER & ENGLISH, LLP, Joseph Lubertazzi, Jr., Esq., Four Gateway Center, 100 Mulberry Street, Newark, New Jersey 07102-4056 |

TOTAL: 1

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| aty | | BP CM Aquisition SPV, LLC |
| intp | | Mendy Klein |

TOTAL: 2 Undeliverable, 0 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Sep 04, 2026 Signature: /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on September 2, 2026 at the address(es) listed below:**

| Name | Email Address |
|---|---|

| | | |
|---|---|---|
| District/off: 0207-1 | User: admin | Page 2 of 2 |
| Date Rcvd: Sep 02, 2026 | Form ID: pdfall | Total Noticed: 5 |

Christian Nelson Martinez
on behalf of Debtor BE GREENBRIAR LLC christian@cmartinez-law.com

Joseph Lubertazzi, Jr
on behalf of Attorney BP CM Aquisition SPV LLC jlubertazzi@mccarter.com

Office of the United States Trustee
USTPRegion02.BR.ECF@usdoj.gov

TOTAL: 3

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

Chapter 11

BE GREENBRIAR LLC,

Case No. 1-26-42859-jmm

Debtor.
------------------------------------------------------------x

**ORDER SCHEDULING INITIAL CASE MANAGEMENT CONFERENCE**

An Involuntary Petition having been filed by Petitioning Creditor(s) on June 8, 2026, and an order for relief having been entered on July 28, 2026, and the Court having determined that a Case Management Conference will aid in the efficient conduct and proper administration of the case, it is hereby

**ORDERED**, pursuant to 11 U.S.C. § 105(d), that a Case Management Conference will be held before the Honorable Jil Mazer-Marino of the United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Courtroom 3529, Brooklyn, New York 11201 on **September 30, 2026 at 10:00 a.m.**; and it is further

**ORDERED**, that the Case Management Conference may be held in person, by phone, or by videoconference. Regardless of whether you intend to appear in person, by phone, or by videoconference, those intending to appear at the conferences must register with eCourt Appearances no later than two (2) days prior to each conference. The phone number or video link for the hearing will be emailed only to those that register with eCourt Appearances in advance of the hearing. Instructions for registering with eCourt Appearances can be found at https://www.nyeb.uscourts.gov/node/2126. If you do not have internet access or are otherwise unable to register with eCourt Appearances, you may call or email Judge Mazer-Marino's courtroom deputy for instructions at (347) 394-1844, JMM_Hearings@nyeb.uscourts.gov; and it is further

**ORDERED**, that the Debtor, or an authorized representative of the Debtor, and counsel for the Debtor, shall be present at the Case Management Conference and shall be prepared to address the following matters:

- the nature of the Debtor's business and the reason for commencing this case;

- the Debtor's compliance with 11 U.S.C. §§ 1116(2), (3), (4), (5), (6) and (7);

- the Debtor's financial condition, including post-petition operations and revenue, debtor-in-possession financing, and the use of cash collateral;

- the status of the Debtor's applications to retain professionals;

- the status of the Debtor's application for an order to fix the last date for creditors to file proofs of claim;

- projected date for filing a plan of reorganization and disclosure statement;

- if this is a single asset real estate case, the Debtor's proposal for satisfying 11 U.S.C. §362(d)(3);

- significant motions and adversary proceedings anticipated by the Debtor; and

- the scheduling of additional Case Management Conferences;

and it is further

**ORDERED**, that the Debtor shall file with the Court, and serve upon the Office of the United States Trustee, monthly operating reports during the pendency of this case; that the operating reports shall be in the form prescribed by the Office of the United States Trustee's Operating Guidelines and Reporting Requirements for Debtors-in-Possession and Trustees for cases pending in this District; and that the operating reports shall be served and filed on or before the 20th day of the month following the reporting period, and it is further

**ORDERED**, to the extent applicable, the Debtor shall file with the Court, and serve on the Office of the United States Trustee, quarterly reports concerning entities the Debtor controls pursuant to Bankruptcy Rule 2015.3; and it is further

**ORDERED**, that unexcused failure to attend any Case Management Conference or to file timely monthly operating reports or related entity reports in compliance with this Order may constitute cause for conversion of this case to Chapter 7 or dismissal of this case pursuant to 11 U.S. C. § 1112, and it is further

**ORDERED**, that the Clerk of Court give notice of this Order to the Debtor, its counsel, the United States Trustee and all creditors and parties in interest.

Dated: September 2, 2026
Brooklyn, New York

Jil Mazer-Marino
Chief United States Bankruptcy Judge

# EXHIBIT I

**Second Amended Consent Final Judgment of Foreclosure**

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT, IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

CASE NO.: 2025-CA-8982

BP CM ACQUISITION SPV, LLC,

Plaintiff,

v.

BE GREENBRIAR LLC, a Florida limited liability company; BE UNION LLC, a Florida limited liability company; and MEADOW WOOD PROPERTY COMPANY, a Florida corporation;

Defendants.
_______________________________________/

**AMENDED CONSENT FINAL JUDGMENT OF FORECLOSURE**

THIS CAUSE having come before the Court on the agreement between Plaintiff BP CM Acquisition SPV, LLC and Defendants BE Grenbriar LLC and BE Union LLC, and the Court, having reviewed the Consent to Entry of Final Judgment of Foreclosure signed by Defendants BE Greenbriar LLC and BE Union LLC that was filed in this action and included as an exhibit hereto, and being otherwise fully advised in the premises, it is hereby **ORDERED AND ADJUDGED:**

1. The Court finds that proper service of process was made on the Defendants. This Court has jurisdiction over the subject matter and parties; through this consent, the parties have agreed that the allegations contained in the Complaint have been proven by competent evidence; and the equities are with Plaintiff.

2. The Loan Documents on which Plaintiff sued constitute a valid first lien upon the property hereafter described, are valid and binding, and Defendants are in default under the Loan Documents, as alleged in the Complaint.

ME1\60355486.v1

3. The following amount is due and owing to Plaintiff:

| | |
|---|---|
| Principal | $14,250,000.00 |
| Interest from November 9, 2025 through May 9, 2026 (5% contract rate under the Note) | $ 638,843.33 |
| Default interest from November 9, 2025 through May 9, 2026 (varying rate between 7.91% and 7.49% layered on regular rate) | $ 601,666.67 |
| Late Fees (5%) | $ 712,500.00 |
| Receivership fees | $ 34,000.00 |
| Filing fees and service of process | $ 902.94 |
| Title commitment and update | $ 1,000.00 |
| Attorneys' fees through March 31, 2026 | $ 42,011.50[1][2] |
| **TOTAL DUE** | **$ 16,280,924.44** |

4. The total amount referenced in Paragraph 3 shall bear interest from this date forward at the prevailing legal rate of 8.25% per annum from this date through December 31 of this current year, for which sum let execution issue forthwith. Thereafter, the interest rate will adjust in accordance with section 55.03, Florida Statutes, until the judgment is paid.

5. Plaintiff holds a lien for the total sum due superior to any right, title, interest, claim or estate of Defendants, or any of them, in and to the property described herein (the "Property"):

Parcel 1:

[1] In their Consent, Defendants BE Greenbriar LLC and BE Union LLC consented to the amounts set forth above, including the amount of attorneys' fees, obviating the need for submission of an affidavit of reasonableness. Further, fees continue to be incurred, and these amounts do not include fees and costs associated with pursuit of the guarantors in New York action.

[2] The attorneys's fees are composed of the following: Joseph Lubertazzi, Chairman of the Firm and relationship attorney, 7.6 hours at $990/hour: $7,524.00; Stephanie Reed Traband, lead counsel, 39.70 hours at $775 and $800/hour: $31,457.50; Marlene James, paralegal, 1.5 hours at blended rate of $391.67/hour: $587.50; Chailene Fernandez, paralegal assistant, 1.90 hours at $275/hour: $522.40; Tyler Mitchell, non-Florida associate, 3.2 hours at $600/hour: $1,920.00.

Begin 5 chains East of the Northwest corner of Section 32, Township 28 South, Range 19 East, and run thence South 5 chains, East 5 chains, North 5 chains and West 5 chains to Point of Beginning, and otherwise described as the Northeast Quarter of the Northwest Quarter of the Northwest Quarter of the Northwest Quarter of Section 32, Township 28 South, Rage 19 East, Hillsborough County, Florida, less existing right of way for Sligh Avenue and the South 15 feet of the North 40 feet of aforesaid described lands.

Parcel 2:

BEING all that lot or parcel of land, with improvements thereon and appurtenances thereto, which is more particularly described as follows:

The South 339.00 feet of the West 1/2 of the Northwest 1/4 of the Northwest 1/4 of the Northeast 1/4 of Section 7, Township 28 South, Range 19 East, Hillsborough County, Florida, LESS the West 30.00 feet thereof as described in Deed Book 1875, Page 316, of the Public Records of Hillsborough County; AND LESS the South 30.00 feet of the West 35.00 feet of the West 1/2 of the Northwest 1/4 of the Northwest 1/4 of the Northeast 1/4 of Section 7, Township 28 South, Range 19 East, Hillsborough County, Florida; LESS the West 30.00 feet thereof, as described in Official Records Book 3890, Page 228, of the Public Records of Hillsborough County, Florida.

This lien is superior to any lien claimed by Defendant Meadow Wood Property Company, which filed an answer in this case in which it acknowledged the superiority of Plaintiff's lien, merely reserving its right to claim in any surplus funds.

6. Under Section 45.031, Florida Statutes, if the total sum with interest at the rate described above and all cost accrued subsequent to the judgment are not paid, the Clerk of the Court shall sell the Property at public sale on the 8th day of June, 2026, at 10:00 a.m., to the highest bidder for cash, except as set forth hereinafter, in Hillsborough County, Florida, online at https://hillsborough.realforeclose.com.

7. Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the Clerk if Plaintiff is not the purchaser of the Property for sale. If Plaintiff is the purchaser, the Clerk shall credit Plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment or such part of it as is necessary to pay the bid in full. If, subsequent to the date of the entry of this Final Judgment and prior to the sale contemplated herein, Plaintiff shall be required to advance any monies to protect its lien and/or security interest, then upon

motion and Order from the Court, the amount due to Plaintiff shall be increased by the amount of such advance(s).

8. On filing the certificate of title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of Plaintiff's costs; second, documentary stamps affixed to the certificate; third, Plaintiff's attorneys' fees; fourth, the total sum due to Plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 4 from this date to the date of the sale; and by retaining any remaining amount pending the further order of this Court.

9. Should the Property be sold at the Clerk's sale to a third-party bidder, the costs of the documentary stamps affixed to the certificate of title shall be paid by the prevailing third-party bidder.

10. After confirmation of the sale, whether confirmation be by the Clerk's filing the certificate of title or by order of this Court ruling upon objections to the sale, Defendants and all persons claiming by, through, under, or against them since the filing of the Notice of Lis Pendens herein, shall be forever foreclosed of all right, title, interest, estate or claim in the Property being sold and the purchaser at the sale shall be let into possession thereof.

11. On filing the certificate of sale, Defendants and all persons claiming under or against Defendants since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the Property, except as to claims or rights under Chapter 718, if any.

12. Immediately after the confirmation of the sale, whether confirmation be made by the Clerk's issuance of the certificate of title or by order of this Court ruling upon any objections to the sale, the Clerk shall, at the request of Plaintiff, immediately issue a writ of possession.

13. This Court retains jurisdiction to enter any further orders as necessary, including, but not limited to, a re-foreclosure and the filing of any supplemental complaint to add an omitted

party post-judgment, to seek writ(s) of possession and to pursue a deficiency judgment against Defendants.

14. Plaintiff may assign this judgment and any rights under it, including, but not limited to, their right to credit bid, by the filing of an assignment without further Order of the Court.

15. The last known addresses of the Defendants are as follows:

BE GREENBRIAR LLC
50 Union Avenue, Suite 505, Irvington, New Jersey 07111

BE UNION LLC
50 Union Avenue, Suite 505, Irvington, New Jersey 07111

MEADOW WOOD PROPERTY COMPANY
4014 Gunn Highway, Suite 270, Tampa, Florida 33618

**NOTICE PURSUANT TO AMENDMENT TO SECTION 45.031, FLA. STAT.**

**IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.**

**IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.**

**IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE HILLSBOROUGH COUNTY CLERK OF THE COURT, (813) 276-8100, 419 PIERCE STREET, TAMPA, FLORIDA 33602, WITHIN TEN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.**

**IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR**

**PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT BAY AREA LEGAL SERVICES, INC., GEORGE EDGECOMB COURTHOUSE, 800 E. TWIGGS ST., ROOM 101, TAMPA, FL 33602, 800-625-2257 TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT BAY AREA LEGAL SERVICES, INC. FOR ASSISTANCE, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.**

DONE AND ORDERED in Hillsborough County, Florida, on this ___ day of _________, 2026.

25-CA-008982 5/4/2026 2:17:16 PM

**25-CA-008982 5/4/2026 2:17:16 PM**
**Judge Laura E. Ward**
Circuit Judge

Copies furnished to all counsel and parties of record.

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT, IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

CASE NO.: 2025-CA-8982

BP CM ACQUISITION SPV, LLC,

Plaintiff,

v.

BE GREENBRIAR LLC, a Florida limited liability company; BE UNION LLC, a Florida limited liability company; and MEADOW WOOD PROPERTY COMPANY, a Florida corporation;

Defendants.
_______________________________________/

**CONSENT TO ENTRY OF CONSENT FINAL JUDGMENT OF FORECLOSURE**

This CONSENT TO ENTRY OF CONSENT FINAL JUDGMENT OF FORECLOSURE (the "Stipulation") is made and entered into as of __________, ___ 202, by BE GREENBRIAR LLC and BE UNION, LLC ("Borrowers").

Borrowers consent to the entry of a final judgment of foreclosure and waive any right to contest same or to otherwise require the submission of a motion for final judgment of foreclosure. Borrowers further acknowledge that this Consent has been delivered to Plaintiff and Plaintiff is authorized to file this Consent together with the proposed Consent Final Judgment of Foreclosure to evidence the consent by Borrowers to entry of the Consent Final Judgment of Foreclosure.

**IN WITNESS WHEREOF**, Borrowers have caused this Consent to be duly executed by their duly authorized representatives, all as of the day and year first above written..

**BE GREENBRIAR LLC**

Simon Markovici

By: 4/30/26
Name:
Title:

**BE UNION LLC**

Simon Markovici

By: 4/30/26
Name:
Title:

# EXHIBIT J

**BE Tampa LLC Operating Agreement - selected authority provisions**

thereto into account) and (y) during any time that the Excess Capital is equal to zero, in accordance with the number of Units held by the Members at such time.

## ARTICLE V

## Management; Rights Powers and Duties of Members

### 5.1 Management of Business and Affairs of the Company.

A. MANAGER. Except as otherwise specifically provided in this Agreement, the management and control of the business and affairs of the Company shall be vested in a manager (the "***Manager***" or ***"Managers"***) selected to be the manager of the Company from time to time by the Members. The Manager need not be a Member. The Members hereby designate and appoint Boone Manager to serve as the initial Manager. Notwithstanding anything to the contrary in this Agreement, so long as any obligation is outstanding under the Loan Documents, Lender's consent may be required to replace Boone Manager as the manager of the Company.

B. NATURE OF MANAGER. The Manager may be a Person who shall hold office until its successor is elected or appointed and qualified, or until its earlier resignation or removal.

C. REMOVAL OF MANAGER; RESIGNATION. Subject in all events to the terms of the Loan Documents, the Manager may only be removed from office by the Consent of the Members but only for (i) gross negligence, willful misconduct or fraud of the Manager, including, without limitation, theft, embezzlement or material misrepresentations or concealments on any written reports, (ii) material breach by Manager of its obligations under this Agreement, (iii) bankruptcy, insolvency or inability of the Manager to meet its obligations as the same come due, (iv) adjudication by a court of competent jurisdiction of the Manager as an incompetent; (v) the failure of such Manager to substantially and satisfactorily perform its fiduciary duties assigned by the Company as determined by a non-appealable court of competent jurisdiction, or (vi) a Manager's conviction of, or plea of nolo contendere to, any felony or to any crime or offense involving acts of theft, fraud, embezzlement or similar conduct. A Manager may resign by written notice to the Company at the address provided for in Section 2.3 hereof, which resignation shall, unless otherwise specified in the resignation notice, be effective upon the appointment of a successor Person to act as Manager by the Consent of the Members.

D. VACANCY OF MANAGER. In the event of a vacancy in the position of manager of the Company (either as a result of resignation or removal of the current Manager), the Members, by Consent of the Members, shall elect a successor to fill a vacancy of the Manager.

E. OMIT.

F. EXPENSES. The Manager shall be reimbursed by the Company for all reasonable out-of-pocket expenses incurred by it in connection with its services (including, without limitation, all reasonable travel and accommodation expenses).

G. DUE DILIGENCE FEE. The Company shall cause the Fee Owner (without duplication of the payment set forth in the Fee Owner's Operating Agreement) to pay to Yisrael Hayum and Pini Markovits the Acquisition Fee (as hereinafter provided) at closing, out of the closing proceeds. The "***Acquisition Fee***" shall equal 1% of the total purchase price of the Property.

**5.2 Action by Manager; Authority of the Manager.**

A. Subject to the provisions contained in this Article V and any other provision contained in this Agreement which requires the consent or approval of one or more Members, the Managers shall have the exclusive power and authority to manage the business and affairs of the Company and to make all decisions with respect thereto. Except as otherwise expressly provided in this Agreement, the Managers or Persons designated by the Managers, including officers and agents appointed by the Managers, shall be the only Persons authorized to execute documents which shall be binding on the Company. To the fullest extent permitted by Florida law, but subject to any specific provisions hereof granting rights to Members, the Managers shall have the power to do any and all acts, statutory or otherwise, with respect to the Company or this Agreement, which would otherwise be possessed by the Members under the laws of the State of Florida and the Members shall have no power whatsoever with respect to the management of the business and affairs of the Company.

B. Managers Authority. The power and authority granted to the Manager hereunder shall include all those necessary or convenient for the furtherance of the purposes of the Company and shall include the power to make all decisions with regard to the management, operations, assets, financing and capitalization of the Company, without the need to obtain consent of any of the Members (unless otherwise expressly set forth herein) including without limitation, the power and authority to undertake and make decisions concerning, directly or indirectly: (a) hiring and firing of employees, attorneys, accountants, brokers, investment bankers and other advisors and consultants, (b) entering into leases for real or personal property, (c) opening bank and other deposit accounts and operations thereunder, and depositing/withdrawing funds therefrom, (d) purchasing, encumbering, or selling the Property or interests therein, (e) purchasing insurance, goods, supplies, equipment, materials and other personal property used in connection with the Property, (f) borrowing money, including without limitation, the Loan, obtaining of credit, issuance of notes, including, without limitation, the Note, debentures, securities, equity or other interests of or in the Company and securing of the obligations undertaken in connection therewith with mortgages, including, without limitation the Mortgage, on and security interest in all or any portion of the real or personal property of the Company, (g) executing on behalf of the Company all instruments and documents, including without limitation the Purchase Agreement and the Loan Documents, and causing the Company to comply with the terms thereof and any further instructions from Lender (h) giving guarantees and indemnities in connection with loans to the Company, (i) entering into contracts or agreements in the ordinary course of business, (j) dissolution, (k) the sale, financing, refinancing or lease of all or any portion of the assets of the Company, including without limitation the Property, (l) compromising, arbitrating, adjusting and litigating claims in favor of or against the Company, (m) entering into a 1031 Transaction, (n) constructing, improving, developing and maintaining the Property, (m) Omit, (n) obtaining D&O insurance and similar insurances as

determined by Managers, and (o) all other acts or activities necessary or desirable for the carrying out of the purposes of the Company and all without further consent or resolution whatsoever. Notwithstanding anything to the contrary contained herein, unanimous consent of the Managers shall be required for any of the foregoing, to the extent the cost of such action shall be $50,000.00 or more.

C. The Members hereby consent and agree for the Company to cause Fee Owner to refinance the Property at a future date and obtains a new loan (with the same or a different lender), and in connection therewith, the Members hereby approve and consent to the Manager entering into such new loan with a lender, and to execute any and all documents on behalf of the Company and/or Fee Owner in connection with such new loan, without the need of any further approval from the Members (which consent is hereby deemed given); provided, however, that unanimous consent of the Managers shall be necessary for any refinance. Additionally, the Members explicitly hereby consent to any amendments to this Agreement in connection with such new loan, including without limitation adding/replacing the definition of "Lender", and "Loan" (and the like), incorporating lender comments, and replacing Article XII.

D. Restrictions on Manager's Authority. Notwithstanding any provision of this Agreement to the contrary, neither the Company, nor the Manager, nor the Members shall have authority to cause or to take any of the following actions or decisions without the Consent of the Members:

(i) (A) file any voluntary petition in bankruptcy on behalf of the Company, (B) consent in writing to the filing of any involuntary petition in bankruptcy against the Company, (C) file any petition seeking, or consenting to, reorganization or relief under any applicable federal, state or foreign law relating to bankruptcy or insolvency, on behalf of the Company;

(ii) amending the Company's certificate of formation or this Agreement in a manner which adversely affects any Member, provided however that the Managers shall be authorized (without the consent of the Members) to (a) amend *Schedule A* to reflect changes in the ownership of the Company pursuant to the provisions of this Agreement, and (b) amend this Agreement to incorporate revisions required by any lender making a loan to the Company;

(iii) use or permit any other person or entity to use Company funds or assets in any manner except for the exclusive benefit of the Company;

(iv) alter the primary purpose of the Company;

(v) sell or lease to the Company any real property in which the Manager or any of its Affiliate has any interest without the Consent of the Members;

(vi) admit another person or entity as a Manager without the Consent of the Members;

(vii) reinvest Available Cash in any additional properties other than the Property;

(viii) confess a judgement against the Company in connection with any threatened or pending legal action with the Consent of the Members;

(ix) commingle the Company funds with those of any other person or entity;

(x) Directly or indirectly pay or award any finder's fees or commissions to any person or entity which in the aggregate would exceed customary finder's fees/commissions;

(xi) merge, combine or "roll-up" the Company into a partnership, limited liability Company, or other entity or participate in an UPREIT, DOWNREIT or similar transaction with a real estate investment trust or other entity without a Majority Vote of the voting Members; or

(xii) amending Section 5.3;

(xiii) require any Capital Contribution except as provided in Section 3.2 hereof, or exercise any option to repurchase any Member's interest except as expressly set forth herein;

(xiv) Acquire by purchase, ground lease, or otherwise, any real or personal tangible property other than the Property or items necessary for the operation or management of the Property;

(xv) Enter into a ground lease of the entire Property;

(xvi) Undertake any action the costs of which would exceed the greater of (x) $250,000.00 (other than in connection with work required to be performed by Fee Owner pursuant to the terms of the Loan Documents) and (y) the amount set forth in the budget approved by the Members; or

(xvii) Transfer the Manager's interest, or install a substitute Manager.

E. Responsibilities of the Manager. In connection with the exercise of the Manager's authority, the Manager shall:

(i) Have a fiduciary responsibility for the safekeeping and use of all the funds and assets of the Company;

(ii) Devote such of his (or if applicable, of its officers', agents' or employees' time and efforts to the business of the Company as the Manager shall in his (or if applicable, in its authorized officers', agents' or employees') discretion, exercised in good faith, determine to be necessary to conduct the business of the Company;

# EXHIBIT K

**BE Greenbriar LLC Operating Agreement - selected authority provisions**

# LIMITED LIABILITY COMPANY AGREEMENT
# OF
# BE GREENBRIAR LLC

This Limited Liability Company Agreement (together with the schedules attached hereto, this "Agreement") of BE GREENBRIAR LLC, a Florida limited liability company (the "Company"), effective as of December 16, 2021 by BE TAMPA LLC, a Florida limited liability company, as the sole equity member (the "Member") and C. Anthony Shippam, as an Independent Director (as defined on Schedule A hereto) and springing member. Capitalized terms used and not otherwise defined herein have the meanings set forth on Schedule A hereto.

The Member, by execution of this Agreement, hereby forms the Company as a limited liability company pursuant to and in accordance with the Florida Limited Liability Company Act, as amended from time to time (the "Act"), and this Agreement, and the Member and Independent Director hereby agree as follows:

Section 1. Name.

The name of the limited liability company formed hereby is BE GREENBRIAR LLC.

Section 2. Principal Business Office.

The principal business office of the Company shall be located at 6 Boone Street Staten Island NY 10314 or such other location as may hereafter be determined by the Member.

Section 3. Registered Office.

The address of the registered office of the Company in the State of Florida is c/o Meadow Wood Property Company, 4014 Gunn Highway, Suite 270, Tampa, FL 33618.

Section 4. Registered Agent.

The name and address of the registered agent of the Company for service of process on the Company in the State of Florida is Joseph Rosenwasser, with an address at C/O Meadow Wood Property Company, 4014 Gunn Highway, Suite 270, Tampa, FL 33618.

Section 5. Member.

(a) The mailing address of the Member is set forth on Schedule B attached hereto. The Member was admitted to the Company as a member of the Company upon its execution of a counterpart signature page to this Agreement.

Section 6. Certificates.

Joseph Rosenwasser is hereby designated as an "authorized person" within the meaning of the Act, and has executed, delivered and filed the Certificate of Formation of the Company with the Secretary of State of the State of Florida. Upon the filing of the Certificate of Formation with the Secretary of State of the State of Florida, his powers as an "authorized person" ceased, and the

Member thereupon became the designated "authorized person" and shall continue as the designated "authorized person" within the meaning of the Act. The Member or the Manager shall execute, deliver and file any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in any other jurisdiction in which the Company may wish to conduct business.

The existence of the Company as a separate legal entity shall continue until cancellation of the Certificate of Formation as provided in the Act.

Section 7. Purposes.

(a) Notwithstanding any provision hereof to the contrary, the following shall govern: The nature of the business and of the purposes to be conducted and promoted by the corporation, is to engage solely in the following activities:

(i) To acquire and to own that certain parcel of real property located at 13214 Bunn Circle Tampa, Florida 33612, together with all improvements located thereon (the "Property").

(ii) To own, hold, operate, develop, lease, mortgage, pledge and otherwise deal with the Property.

(iii) To exercise all powers enumerated in the Act necessary or convenient to the conduct, promotion or attainment of the business or purposes otherwise set forth herein.

(b) The Company is hereby authorized to execute, deliver and perform, and the Manager or any of the Authorized Signatories (as hereinafter defined in Section 11), acting alone, on behalf of the Company is hereby authorized to execute and deliver, (i) the Basic Documents and all documents, agreements, certificates, or financing statements contemplated thereby or related thereto, and (ii) all contracts, agreements, documents, instruments, certificates, affidavits and indemnities of any kind or nature whatsoever related to the Loan and the acquisition of the Property, and may pay all costs in connection therewith, all without any further act, vote or approval of any other Person notwithstanding any other provision of this Agreement or the Act. The foregoing authorization shall not be deemed a restriction on the powers of the Member or the Manager to enter into other agreements on behalf of the Company. Any and all of the foregoing documents and any other documents authorized to be executed and delivered by the Company in accordance with this Agreement may be executed and delivered on behalf of the Company by the Manager, acting alone, and any such document so executed and delivered shall be binding upon the Company.

Section 8. Powers.

Subject to Section 9(f), the Manager, acting alone on behalf of the Company, (i) shall have and exercise all powers necessary, convenient or incidental to accomplish the purposes as set forth in Section 7, including without limitation, the right to sell, assign or transfer the Property, and (ii) shall have and exercise all of the powers and rights conferred upon limited liability companies formed pursuant to the Act.

Section 9. Management.

(a) Manager. Subject to Section 9(f), the business and affairs of the Company shall be managed by or under the direction of the Manager designated by the Member. The authorized number of Managers may be increased or decreased by the Member at any time in its sole and absolute discretion, upon notice to the Managers, and subject in all cases to Section 10. The initial number of Managers shall be three (3). Any Manager elected, designated or appointed by the Member shall hold office until a successor is elected and qualified or until such Manager's earlier death, resignation, expulsion or removal. A Manager need not be a Member. The initial Manager designated by the Member are the following individuals: Yisrael Hayum, Simon Markovici and Pini Markovits. The initial number of Independent Directors shall be one (1). The initial Independent Director and springing member designated by the Member is C. Anthony Shippam.

(b) Powers. Subject to Section 9(f), the Manager, acting alone, shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise. Subject to Sections 7 and 9(f), the Manager, acting alone, has the authority to bind the Company.

(c) Compensation. The Manager shall be reimbursed for any expenses incurred by it in such capacity to the extent approved by the Member. Additionally, Manager (or its affiliate, designee, successor and/or assign) shall receive the below mentioned compensation for services rendered to the Company in its capacity as manager. Nothing in the foregoing sentence shall be construed as to prohibit the Independent Director from being appropriately compensated for their services to the Company.

(i) a one-time acquisition fee to be paid to Yisrael Hayum and Pini Markovits (to be paid simultaneous with, or immediately following, the acquisition of the Property by the Company), in an amount equal to one percent (1%) of the total purchase price of the Property (the "**Acquisition Fee**");

(d) Removal of a Manager. Unless otherwise restricted by law, a Manager may be removed or expelled, with or without cause, at any time by the Member, and, subject to Section 10, any vacancy caused by any such removal or expulsion may be filled by action of the Member.

(e) Manager as Agent. To the extent of its powers set forth in this Agreement and subject to Section 9(f), the Manager is an agent of the Company for the purpose of the Company's business, and the actions of the Manager, acting alone, taken in accordance with such powers set forth in this Agreement shall bind the Company.

(f) Limitations on the Company's Activities.

(i) This Section 9(f) is being adopted in order to comply with certain provisions required in order to qualify the Company as a "special purpose" entity.

(ii) Notwithstanding anything to the contrary in this Agreement or in any other document governing the formation, management or operation of the Company, and any provision of law that so empowers the Company, for so long as any Obligation is outstanding, neither the Member nor the Manager

shall amend, alter, change or repeal Sections 5(c), 7, 8, 9, 10, 16, 20, 21, 22, 23, 24, 25, 26, 29, 31, 35, Schedule A or Schedule C (the "Special Purpose Provisions"), or any other provision of this or any other document governing the formation, management or operation of the Company in a manner that is inconsistent with any of the Special Purpose Provisions of this Agreement without Lender's prior written consent. Subject to this Section 9(f), the Member reserves the right to amend, alter, change or repeal any provisions contained in this Agreement in accordance with Section 31. In the event of any conflict between any of the Special Purpose Provisions and any other provision of this or any other document governing the formation, management or operation of the Company, the Special Purpose Provisions shall control.

(iii) Omit

(iv) The Manager and the Member shall cause the Company to do or cause to be done all things necessary to preserve and keep in full force and effect its existence, rights (charter and statutory) and franchises; provided, however, that the Company shall not be required to preserve any such right or franchise if: (1) the Manager shall determine that the preservation thereof is no longer desirable for the conduct of its business and that the loss thereof is not disadvantageous in any material respect to the Company and (2) the Rating Agency Condition is satisfied. Notwithstanding anything to the contrary in this Agreement or in any other document governing the formation, management or operation of the Company, until such time as the Loan is indefeasibly paid in full, the Manager also shall cause the Company to abide by all terms and conditions on Schedule C.

Section 10. Guarantor Fee. In consideration for Aron Goldklang ("**Aron**") becoming a guarantor for the Loan, Members agree to compensate Aron a one-time guarantor fee, in an aggregate amount equal to one and one-half percent (1.5%) of the total purchase price of the Property (the "**Guarantor Fee**").

Section 11. Independent Director.

At all times at which the Members of the Company shall take, or shall be required to take, any action in such capacity and for so long as the Loan remains outstanding until paid in full, there shall be one (1) Independent Director; and the Company will not take any Material Action without the prior unanimous written consent of the Members and Managers and the Independent Director. And unless, at the time of such action, there shall be one (1) Independent Director who shall have participated in such vote and consented to the taking of such Material Action. To the fullest extent permitted by law, and notwithstanding any duty otherwise existing at law or in equity, the Independent Director shall consider only the interests of the Company, including the Company's creditors, in acting or otherwise voting on Material Actions (which such duties to the Company, in each case, shall be deemed to apply solely to the extent of their respective economic interests in the Company exclusive of (x) all other interests (including, without limitation, all other interests of the Members), (y) the interests of other Affiliates of the Members and the Company, and (z) the

interests of any group of Affiliates of which the Members or the Company is a part)). No resignation or removal of an Independent Director, and no appointment of a successor Independent Director, shall be effective until such successor shall have accepted his or her appointment as an Independent Director by executing a counterpart to this Agreement. In the event of a vacancy in the position of Independent Director, the Member shall, as soon as practicable, appoint a successor Independent Director.

Notwithstanding any other provision of this Agreement or any other documents governing the formation, management, or operation of the Company and notwithstanding any provision of law that otherwise so empowers the Company, the Member, the Manager or any other Person, for so long as the Loan or any portion thereof remains outstanding, neither the Member nor the Manager nor any other Person shall be authorized or empowered, nor shall they permit the Company, without the prior unanimous written consent of the Members and Managers and the Independent Director, to take any Material Action.

For so long as the Loan or any portion thereof remains outstanding, the Lender shall be an intended third-party beneficiary of this Agreement with respect to Section 10.

Section 12. Authorized Signatory.

The Member hereby acknowledges and agrees that each of the following individuals YISRAEL HAYUM and PINI MARKOVITS (each, an "**Authorized Signatory**"), are each individually empowered to do all acts necessary to effectuate the acquisition and obtaining the mortgage loan of the Property, without the joinder of any other person or entity, including without limitation, the entering into the purchase agreement for the purchase of the Property and other related documents, and the execution of the Basic Documents, and any items related to any of the foregoing.

Section 13. Limited Liability.

Except as otherwise expressly provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the Company, and neither the Member nor the Manager nor any Independent Director shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member, Manager or Independent Director of the Company.

Section 14. Capital Contributions.

The Member has contributed to the Company property of an agreed value as listed on Schedule B attached hereto.

Section 15. Additional Contributions.

The Member is not required to make any additional capital contribution to the Company. However, the Member may make additional capital contributions to the Company at any time upon the written consent of such Member. To the extent that the Member makes an additional capital contribution to the Company, the Member shall revise Schedule B of this Agreement.

# SCHEDULE A

## Definitions

### A. Definitions

When used in this Agreement, the following terms not otherwise defined herein have the following meanings:

"Act" has the meaning set forth in the preamble to this Agreement.

"Affiliate" shall mean, as to any Person, any other Person that, directly or indirectly, is in Control of, is Controlled by or is under common Control with such Person or, with respect to any natural Person, is a member of the Family Group (as defined in the Loan Agreement) of such Person.

"Agreement" means this Limited Liability Company Agreement of the Company, together with the schedules attached hereto, as amended, restated or supplemented or otherwise modified from time to time.

"Approved ID Provider" shall mean each of CT Corporation, Corporation Service Company, National Registered Agents, Inc., Wilmington Trust Company, Stewart Management Company and Lord Securities Corporation; provided, that, (A) the foregoing shall be deemed Approved ID Providers unless and until disapproved by any Rating Agency and (B) additional national providers of Independent Directors may be deemed added to the foregoing hereunder to the extent approved in writing by Lender and the Rating Agencies.

"Bankruptcy Action" means, with respect to any Person, (a) file or consent to the filing of any petition, either voluntary or involuntary, to take advantage of any Creditors Rights Laws, (b) seek or consent to the appointment of a receiver, liquidator or any similar official, (c) take any action that might cause such entity to become insolvent, (d) make an assignment for the benefit of creditors or (e) take any Material Action with respect to Company.

"Basic Documents" means this Agreement and the Loan Documents and all documents and certificates contemplated thereby or delivered in connection therewith executed by the Company.

"Certificate of Formation" means the Certificate of Formation of the Company filed with the Secretary of State of the State of Florida on November 18, 2021, as amended or amended and restated from time to time.

"Company" means BE GREENBRIAR LLC, a Florida limited liability company.

"Control" shall mean the power to direct the management and policies of an entity, directly or indirectly, whether through the ownership of voting securities or other beneficial interests, by contract or otherwise. The terms "Controlled" and "Controlling" shall have correlative meanings.

"Covered Persons" has the meaning set forth in Section 20(a).

## SCHEDULE C

"*Special Purpose Entity*" shall mean a corporation, limited partnership or limited liability company which at all times prior to, on and after the date hereof:

(a) was, is and will be organized solely for the purpose of, acquiring, developing, constructing, owning, holding, selling, leasing, transferring, exchanging, managing and operating the Property (and no other property), entering into this Agreement with Lender and performing its obligations under the Loan Documents, refinancing the Property in connection with a permitted repayment of the Loan, and transacting lawful business that is incident, necessary and appropriate to accomplish the foregoing;

(b) has not been, is not, and will not be engaged, in any business unrelated to the acquisition, development, construction, ownership, management or operation of the Property;

(c) has not had, does not have, and will not have, any assets other than those related to the Property;

(d) has not engaged in, sought or consented to, and will not engage in, seek or consent to, any dissolution, winding up, liquidation, consolidation, merger, sale of all or substantially all of its assets, transfer of partnership or membership interests (if such entity is a general partner in a limited partnership or a member in a limited liability company) or amendment of its limited partnership agreement, articles of incorporation or bylaws, articles of organization, certificate of formation or operating agreement (as applicable) with respect to the matters set forth in this definition;

(e) if such entity is a limited partnership, has, had, now has, and will have as its only general partners, Special Purpose Entities each of which (A) is a corporation or single-member Delaware limited liability company or multimember Delaware limited liability company treated as a single member limited liability company that complies with the requirements set forth in subsection (h) hereof, (B) has two (2) Independent Directors, and (C) holds a direct interest as general partner in the limited partnership of not less than one-half-of-one percent (0.5%) (or one-tenth-of-one percent (0.1%), if the limited partnership is a Delaware entity);

(f) if such entity is a corporation, has had, now has and will have one (1) Independent Director, will have bylaws setting forth the requirement of a Special Purpose Entity as defined herein, and has not caused or allowed, and will not cause or allow, the board of directors of such entity to take (x) any Material Action with respect to itself or (y) any other action requiring the unanimous affirmative vote of one hundred percent (100%) of the members of its board of directors unless, in either case, all Independent Directors shall have participated in such vote and shall have voted in favor of such action;

(g) if such entity is a limited liability company with more than one member, has had, now has and will have at least one member that is a Special Purpose Entity (A) that is a corporation (B) that has at least one (1) Independent Director, and (C) that directly owns at least one-half-of-one percent (0.5%) of the equity of the limited liability company (or 0.1% if the limited liability company is a Delaware entity);

# EXHIBIT L

**BE Union LLC Operating Agreement - selected authority provisions**

# LIMITED LIABILITY COMPANY AGREEMENT
# OF
# BE UNION LLC

This Limited Liability Company Agreement (together with the schedules attached hereto, this "Agreement") of BE UNION LLC, a Florida limited liability company (the "Company"), effective as of December 16, 2021 by BE TAMPA LLC, a Florida limited liability company, as the sole equity member (the "Member") and C. Anthony Shippam, as an Independent Director (as defined on Schedule A hereto) and springing member. Capitalized terms used and not otherwise defined herein have the meanings set forth on Schedule A hereto.

The Member, by execution of this Agreement, hereby forms the Company as a limited liability company pursuant to and in accordance with the Florida Limited Liability Company Act, as amended from time to time (the "Act"), and this Agreement, and the Member and Independent Director hereby agree as follows:

Section 1. Name.

The name of the limited liability company formed hereby is BE UNION LLC.

Section 2. Principal Business Office.

The principal business office of the Company shall be located at 6 Boone Street Staten Island NY 10314 or such other location as may hereafter be determined by the Member.

Section 3. Registered Office.

The address of the registered office of the Company in the State of Florida is c/o Meadow Wood Property Company, 4014 Gunn Highway, Suite 270, Tampa, FL 33618.

Section 4. Registered Agent.

The name and address of the registered agent of the Company for service of process on the Company in the State of Florida is Joseph Rosenwasser, with an address at C/O Meadow Wood Property Company, 4014 Gunn Highway, Suite 270, Tampa, FL 33618.

Section 5. Member.

(a) The mailing address of the Member is set forth on Schedule B attached hereto. The Member was admitted to the Company as a member of the Company upon its execution of a counterpart signature page to this Agreement.

Section 6. Certificates.

Joseph Rosenwasser is hereby designated as an "authorized person" within the meaning of the Act, and has executed, delivered and filed the Certificate of Formation of the Company with the Secretary of State of the State of Florida. Upon the filing of the Certificate of Formation with the Secretary of State of the State of Florida, his powers as an "authorized person" ceased, and the

Member thereupon became the designated "authorized person" and shall continue as the designated "authorized person" within the meaning of the Act. The Member or the Manager shall execute, deliver and file any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in any other jurisdiction in which the Company may wish to conduct business.

The existence of the Company as a separate legal entity shall continue until cancellation of the Certificate of Formation as provided in the Act.

Section 7. Purposes.

(a) Notwithstanding any provision hereof to the contrary, the following shall govern: The nature of the business and of the purposes to be conducted and promoted by the corporation, is to engage solely in the following activities:

(i) To acquire and to own that certain parcel of real property located at 2301 E Sligh Ave, Tampa, Florida 33610, together with all improvements located thereon (the "Property").

(ii) To own, hold, operate, develop, lease, mortgage, pledge and otherwise deal with the Property.

(iii) To exercise all powers enumerated in the Act necessary or convenient to the conduct, promotion or attainment of the business or purposes otherwise set forth herein.

(b) The Company is hereby authorized to execute, deliver and perform, and the Manager or any of the Authorized Signatories (as hereinafter defined in Section 11), acting alone, on behalf of the Company is hereby authorized to execute and deliver, (i) the Basic Documents and all documents, agreements, certificates, or financing statements contemplated thereby or related thereto, and (ii) all contracts, agreements, documents, instruments, certificates, affidavits and indemnities of any kind or nature whatsoever related to the Loan and the acquisition of the Property, and may pay all costs in connection therewith, all without any further act, vote or approval of any other Person notwithstanding any other provision of this Agreement or the Act. The foregoing authorization shall not be deemed a restriction on the powers of the Member or the Manager to enter into other agreements on behalf of the Company. Any and all of the foregoing documents and any other documents authorized to be executed and delivered by the Company in accordance with this Agreement may be executed and delivered on behalf of the Company by the Manager, acting alone, and any such document so executed and delivered shall be binding upon the Company.

Section 8. Powers.

Subject to Section 9(f), the Manager, acting alone on behalf of the Company, (i) shall have and exercise all powers necessary, convenient or incidental to accomplish the purposes as set forth in Section 7, including without limitation, the right to sell, assign or transfer the Property, and (ii) shall have and exercise all of the powers and rights conferred upon limited liability companies formed pursuant to the Act.

Section 9. Management.

(a) Manager. Subject to Section 9(f), the business and affairs of the Company shall be managed by or under the direction of the Manager designated by the Member. The authorized number of Managers may be increased or decreased by the Member at any time in its sole and absolute discretion, upon notice to the Managers, and subject in all cases to Section 10. The initial number of Managers shall be three (3). Any Manager elected, designated or appointed by the Member shall hold office until a successor is elected and qualified or until such Manager's earlier death, resignation, expulsion or removal. A Manager need not be a Member. The initial Manager designated by the Member are the following individuals: Yisrael Hayum, Simon Markovici and Pini Markovits. The initial number of Independent Directors shall be one (1). The initial Independent Director and springing member designated by the Member is C. Anthony Shippam.

(b) Powers. Subject to Section 9(f), the Manager, acting alone, shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise. Subject to Sections 7 and 9(f), the Manager, acting alone, has the authority to bind the Company.

(c) Compensation. The Manager shall be reimbursed for any expenses incurred by it in such capacity to the extent approved by the Member. Additionally, Manager (or its affiliate, designee, successor and/or assign) shall receive the below mentioned compensation for services rendered to the Company in its capacity as manager. Nothing in the foregoing sentence shall be construed as to prohibit the Independent Director from being appropriately compensated for their services to the Company.

(i) a one-time acquisition fee to be paid to Yisrael Hayum and Pini Markovits (to be paid simultaneous with, or immediately following, the acquisition of the Property by the Company), in an amount equal to one percent (1%) of the total purchase price of the Property (the "**Acquisition Fee**");

(d) Removal of a Manager. Unless otherwise restricted by law, a Manager may be removed or expelled, with or without cause, at any time by the Member, and, subject to Section 10, any vacancy caused by any such removal or expulsion may be filled by action of the Member.

(e) Manager as Agent. To the extent of its powers set forth in this Agreement and subject to Section 9(f), the Manager is an agent of the Company for the purpose of the Company's business, and the actions of the Manager, acting alone, taken in accordance with such powers set forth in this Agreement shall bind the Company.

(f) Limitations on the Company's Activities.

(i) This Section 9(f) is being adopted in order to comply with certain provisions required in order to qualify the Company as a "special purpose" entity.

(ii) Notwithstanding anything to the contrary in this Agreement or in any other document governing the formation, management or operation of the Company, and any provision of law that so empowers the Company, for so long as any Obligation is outstanding, neither the Member nor the Manager

shall amend, alter, change or repeal Sections 5(c), 7, 8, 9, 10, 16, 20, 21, 22, 23, 24, 25, 26, 29, 31, 35, Schedule A or Schedule C (the "Special Purpose Provisions"), or any other provision of this or any other document governing the formation, management or operation of the Company in a manner that is inconsistent with any of the Special Purpose Provisions of this Agreement without Lender's prior written consent. Subject to this Section 9(f), the Member reserves the right to amend, alter, change or repeal any provisions contained in this Agreement in accordance with Section 31. In the event of any conflict between any of the Special Purpose Provisions and any other provision of this or any other document governing the formation, management or operation of the Company, the Special Purpose Provisions shall control.

(iii) Omit

(iv) The Manager and the Member shall cause the Company to do or cause to be done all things necessary to preserve and keep in full force and effect its existence, rights (charter and statutory) and franchises; provided, however, that the Company shall not be required to preserve any such right or franchise if: (1) the Manager shall determine that the preservation thereof is no longer desirable for the conduct of its business and that the loss thereof is not disadvantageous in any material respect to the Company and (2) the Rating Agency Condition is satisfied. Notwithstanding anything to the contrary in this Agreement or in any other document governing the formation, management or operation of the Company, until such time as the Loan is indefeasibly paid in full, the Manager also shall cause the Company to abide by all terms and conditions on Schedule C.

Section 10. Guarantor Fee. In consideration for Aron Goldklang ("**Aron**") becoming a guarantor for the Loan, Members agree to compensate Aron a one-time guarantor fee, in an aggregate amount equal to one and one-half percent (1.5%) of the total purchase price of the Property (the "**Guarantor Fee**").

Section 11. Independent Director.

At all times at which the Members of the Company shall take, or shall be required to take, any action in such capacity and for so long as the Loan remains outstanding until paid in full, there shall be one (1) Independent Director; and the Company will not take any Material Action without the prior unanimous written consent of the Members and Managers and the Independent Director. And unless, at the time of such action, there shall be one (1) Independent Director who shall have participated in such vote and consented to the taking of such Material Action. To the fullest extent permitted by law, and notwithstanding any duty otherwise existing at law or in equity, the Independent Director shall consider only the interests of the Company, including the Company's creditors, in acting or otherwise voting on Material Actions (which such duties to the Company, in each case, shall be deemed to apply solely to the extent of their respective economic interests in the Company exclusive of (x) all other interests (including, without limitation, all other interests of the Members), (y) the interests of other Affiliates of the Members and the Company, and (z) the

interests of any group of Affiliates of which the Members or the Company is a part)). No resignation or removal of an Independent Director, and no appointment of a successor Independent Director, shall be effective until such successor shall have accepted his or her appointment as an Independent Director by executing a counterpart to this Agreement. In the event of a vacancy in the position of Independent Director, the Member shall, as soon as practicable, appoint a successor Independent Director.

Notwithstanding any other provision of this Agreement or any other documents governing the formation, management, or operation of the Company and notwithstanding any provision of law that otherwise so empowers the Company, the Member, the Manager or any other Person, for so long as the Loan or any portion thereof remains outstanding, neither the Member nor the Manager nor any other Person shall be authorized or empowered, nor shall they permit the Company, without the prior unanimous written consent of the Members and Managers and the Independent Director, to take any Material Action.

For so long as the Loan or any portion thereof remains outstanding, the Lender shall be an intended third-party beneficiary of this Agreement with respect to Section 10.

Section 12. Authorized Signatory.

The Member hereby acknowledges and agrees that each of the following individuals YISRAEL HAYUM and PINI MARKOVITS (each, an "**Authorized Signatory**"), are each individually empowered to do all acts necessary to effectuate the acquisition and obtaining the mortgage loan of the Property, without the joinder of any other person or entity, including without limitation, the entering into the purchase agreement for the purchase of the Property and other related documents, and the execution of the Basic Documents, and any items related to any of the foregoing.

Section 13. Limited Liability.

Except as otherwise expressly provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the Company, and neither the Member nor the Manager nor any Independent Director shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member, Manager or Independent Director of the Company.

Section 14. Capital Contributions.

The Member has contributed to the Company property of an agreed value as listed on Schedule B attached hereto.

Section 15. Additional Contributions.

The Member is not required to make any additional capital contribution to the Company. However, the Member may make additional capital contributions to the Company at any time upon the written consent of such Member. To the extent that the Member makes an additional capital contribution to the Company, the Member shall revise Schedule B of this Agreement.

# EXHIBIT M

**BP CM Revised Proposed Final Section 543 Order**

**EXHIBIT A**

**Revised Order**

**Error! Unknown document property name.**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BE Greenbriar LLC, | ) | Case No. 1-26-42859 (JMM) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**FINAL ORDER GRANTING MOTION**
**AUTHORIZING CUSTODIAN TO REMAIN IN POSSESSION**
**<u>OF PROPERTY OF THE ESTATE UNDER BANKRUPTCY CODE SECTION 543(d)</u>**

**WHEREAS,** BP CM Acquisition SPV, LLC, (the "Lender") filed a *Motion for an Order Authorizing Custodian to Remain in Possession of Property of the Estate Under 11 U.S.C. §543* (the "Motion"), with all accompanying exhibits, pertaining to properties located at 13214 Bunn Circle, Tampa, Florida and 2301 East Sligh Avenue, Tampa, Florida (the "Property") [Docket No. 6];

**WHEREAS,** it appearing that due and sufficient notice of the Motion and the hearing thereon was provided;

**WHEREAS,** on July 13, 2026, a hearing having been held on the Motion at which the Court considered any opposition to the relief requested in the Motion;

**WHEREAS**, on July 27, 2026, the Court entered the *Interim Order Granting Motion Authorizing Custodian to Remain in Possession of Property of the Estate Under Bankruptcy Code Section 543(d)* [Docket No. 13], granting the Motion on an interim basis until September 11, 2026;

**WHEREAS**, on September 9, 2026 at 10:30 a.m., the Court held a hearing to determine whether the relief requested under the Motion should continue;

**NOW, THEREFORE,** it is hereby

**ORDERED** that the Motion is granted as set forth herein; and it is further

**ORDERED** that the Receiver[1] is to manage, collect all Rents, retain all powers, and perform all acts for the Property as defined in and set forth in the Receivership Order (attached hereto as **Exhibit A**); and it is further

**ORDERED** that Debtor, its member(s), and its agent(s) shall continue to turnover to Receiver all accounts, information, documentation, and other items related to the Property as set forth in the Receivership Order and as otherwise necessary to permit the Receiver to perform its duties; and it is further

**ORDERED** that Debtor, its member(s), and its agent(s) shall continue to provide full cooperation to the Receiver and its property manager in compliance with this Order; and it is further

**ORDERED** that the Receiver shall provide proof of insurance related to the Property, and proof of insurance renewal, if applicable, to the Office of United States Trustee and to the Debtor; and it is further

**ORDERED** that the Debtor shall pay all fees, and any applicable interest thereon, that are required to be paid to the Office of United States Trustee under to 28 U.S.C. § 1930(a); and it is further

**ORDERED** that the Receiver shall provide the Debtor with any information, including any relevant bank account statements and financial account statements, necessary for the Debtor to prepare monthly operating reports.

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Motion.

Dated: ___________________, 2026
Brooklyn, New York

________________________________
Honorable Jil Mazer-Marino
United States Bankruptcy Judge

ME1\62684005.v1

# EXHIBIT N

**Notice Recipients for ECF No. 34**

# Notice Recipients

| | | |
|---|---|---|
| District/Off: 0207−1 | User: admin | Date Created: 9/11/2026 |
| Case: 1−26−42859−jmm | Form ID: pdf000 | Total: 2 |

**Recipients of Notice of Electronic Filing:**

| | | |
|---|---|---|
| ust | Office of the United States Trustee | USTPRegion02.BR.ECF@usdoj.gov |

TOTAL: 1

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | | |
|---|---|---|---|
| ptcrd | David Neiman | 1620 Vauxhall Rd Suite 308 | Union, NJ 07083 |

TOTAL: 1

# EXHIBIT INDEX
# MOTION TO WITHDRAW OR PARTIALLY WITHDRAW THE REFERENCE

**EXHIBIT A:** Current Bankruptcy Docket History through September 14, 2026 (5 source pages)

**EXHIBIT B:** ECF No. 34 - Order Granting Conditional Relief from the Automatic Stay (2 source pages)

**EXHIBIT C:** ECF No. 23 - Debtor's Objection to Stay Relief (selected opening/argument pages) (12 source pages)

**EXHIBIT D:** ECF No. 24 - Declaration of Yisrael Hayum and Written Consent (4 source pages)

**EXHIBIT E:** District Court RICO Complaint - Case No. 1:26-cv-05526 (32 source pages)

**EXHIBIT F:** ECF No. 32-2 - Receiver Income Statement and Rent Roll (6 source pages)

**EXHIBIT G:** ECF No. 33 - Adjournment / Reporting Request (3 source pages)

**EXHIBIT H:** ECF No. 29 - Order Scheduling Initial Case Management Conference (5 source pages)

**EXHIBIT I:** Second Amended Consent Final Judgment of Foreclosure (8 source pages)

**EXHIBIT J:** BE Tampa LLC Operating Agreement - selected authority provisions (4 source pages)

**EXHIBIT K:** BE Greenbriar LLC Operating Agreement - selected authority provisions (7 source pages)

**EXHIBIT L:** BE Union LLC Operating Agreement - selected authority provisions (5 source pages)

**EXHIBIT M:** BP CM Revised Proposed Final Section 543 Order (4 source pages)

**EXHIBIT N:** Notice Recipients for ECF No. 34 (1 source pages)

**Important:** ECF No. 30 (Notice of Default) is reflected on the live docket but was not among the supplied attachments. Counsel should download ECF No. 30 and add it as a supplemental exhibit before filing if available.

Information to identify the case:

Debtor BE GREENBRIAR LLC EIN: 00−0000000

Name

United States Bankruptcy Court Eastern District of New York Date case filed for chapter: 11 6/8/26

Case number: 1−26−42859−jmm

# TRANSMITTAL OF MOTION FOR WITHDRAWAL OF REFERENCE

**TO THE CLERK, U.S. DISTRICT COURT, EASTERN DISTRICT OF NEW YORK:**

A Motion for Withdrawal of Reference having been filed herein by Christian N. Martinez on Behalf of BE Greenbriar LLC on September 17, 2026.

**PLEASE TAKE NOTICE** that transmittal is made of the following pursuant to Bankruptcy Rule 5011−1:

ECF #39 Motion for Withdrawal of Reference

Dated: October 9, 2026

Paul Dickson, Clerk of Court

By: s/M. Mendieta

______________

Deputy Clerk

**BLwdrref.jsp** [Transmittal of Motion for Withdrawal of Reference 2/25/20]

# Notice Recipients

| | | |
|---|---|---|
| District/Off: 0207−1 | User: admin | Date Created: 10/9/2026 |
| Case: 1−26−42859−jmm | Form ID: 781 | Total: 8 |

**Recipients submitted to the BNC (Bankruptcy Noticing Center) without an address:**

| | |
|---|---|
| aty | BP CM Aquisition SPV, LLC |
| intp | Mendy Klein |

TOTAL: 2

**Recipients of Notice of Electronic Filing:**

| | | |
|---|---|---|
| ust | Office of the United States Trustee | USTPRegion02.BR.ECF@usdoj.gov |
| aty | Christian Nelson Martinez | christian@cmartinez−law.com |
| aty | Joseph Lubertazzi, Jr | jlubertazzi@mccarter.com |

TOTAL: 3

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | | | | |
|---|---|---|---|---|---|
| db | BE GREENBRIAR LLC | 50 Union Avenue, Suite 505 | Irvington, NJ 07111 | | |
| ptcrd | David Neiman | 1620 Vauxhall Rd Suite 308 | Union, NJ 07083 | | |
| aty | Christian N. Martinez | The Law Office of Christian N. Martinez | PO Box 3 | Chester, NY 10918 | |

TOTAL: 3